# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-01090-SCT

*HEIRS AND WRONGFUL DEATH BENEFICIARIES OF APRIL TENILLE BRANNING, BY AND THROUGH LELIA BRANNING TUCKER, THE MOTHER OF APRIL TENILLE BRANNING, INDIVIDUALLY AND ON BEHALF OF LESTER BRANNING, FATHER OF APRIL TENILLE BRANNING, SCOTT BRANNING, BROTHER OF APRIL TENILLE BRANNING AN D MICHAEL B. RIVES*

*v.*

*HINDS COMMUNITY COLLEGE DISTRICT*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 08/15/1997 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | SHANE F. LANGSTON |
| | JOHN HOLADAY |
| | EDWARD A. WILLIAMSON |
| | T. JACKSON LYONS |
| | CRYSTAL DIANE WISE |
| ATTORNEYS FOR APPELLEE: | BEN J. PIAZZA, JR |
| | H. MITCHELL COWAN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 07/01/1999 |
| MOTION FOR REHEARING FILED: | 04/22/1999 |
| MANDATE ISSUED: | 7/8/99 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Motions for rehearing denied. Original opinions are withdrawn and this opinion substituted therefor.

¶2. This action arose from a plane crash on the night of October 25, 1994 at the John Bell Williams Airport (the "Airport") near Raymond, Mississippi. April Branning, a passenger in the plane, died in the crash. The

pilot, Michael Tomlinson, also died in the accident. Two other passengers, Michael Rives and Monica Hancock, survived but sustained injuries.

¶3. Michael Tomlinson, April Branning, Michael Rives and others were at Swayze's Bar on the night of the plane crash. At Swayze's, Tomlinson showed a videotape recording of a flight with himself as a pilot. The flight had taken place earlier that day. Michael Tomlinson invited April Branning, Michael Rives and Monica Hancock to go with him on a night flight. The four left Swayze's Bar and drove to John Bell Williams Airport. Michael Tomlinson told the passengers that he was the manager of the airport. He used his keys to open the hangar which contained the airplane owned by Tomlinson Avionics and removed the plane. Michael Tomlinson operated the airplane as pilot in command. Upon departing the runway Michael Tomlinson failed to maintain proper altitude which resulted in the airplane impacting a group of trees near the airport and crashing to the ground. Michael Tomlinson had a blood alcohol level of .122%, which exceeds the legal limit to operate an airplane or motor vehicle.

¶4. Hinds Community College District ("HCCD") is the airport authority for the John Bell Williams Airport under a long term lease from Hinds County, Mississippi. Hinds contracted with Tomlinson Avionics, Inc., on June 1, 1994, for that entity to be its airport manager and a "Fixed Base Operator" at the John Bell Williams Airport. The terms of the Airport Manager contract called for Tomlinson Avionics to operate the airport in compliance with rules and regulations prescribed by Hinds, as well as those promulgated by the United States and the State of Mississippi.

¶5. The contract required Tomlinson Avionics to log arrivals and departures, collect fees for ramp space and hangar space and for any special events occurring at the airport. The rates charged for some ramp space and some hangar space could be set by Tomlinson Avionics, but only with Hinds' concurrence. Other hangar space rental fees were set by Hinds in the contract.

¶6. The "fixed base operator" contract provided that Tomlinson Avionics would be the airport's aviation products and service provider. Tomlinson Avionics was leased the terminal building and a hangar in which to conduct general aviation aeronautical activities "for the use and benefit of the public." In pursuit of these activities, Tomlinson Avionics was also required to abide by Hinds' "Minimum Standards For Fixed Base Operators" for general aviation.

¶7. Both Hinds' officials and Tomlinson Avionics principal, Carey Tomlinson, agreed that Michael Tomlinson was the person in charge of Tomlinson Avionics' John Bell Williams Airport duties as airport manager and FBO.

¶8. As required by Hinds' Minimum Standards, Michael Tomlinson was Tomlinson Avionics' person on call "at hours during the day or night". This was evidenced by a brochure which was prepared by Michael Tomlinson and stated that he could be contacted by pager.

¶9. The beneficiaries of April Branning filed suit in the Circuit Court of Hinds County, Mississippi on February 17, 1995 against the pilot, Michael Tomlinson, and his employer, Tomlinson Avionics, Inc. They later amended their Complaint to assert claims against Hinds Community College District, the lessee of the airport. Michael Rives filed a separate action in Hinds County Circuit Court against Hinds and the Tomlinson Defendants on January 25, 1996. His action later was consolidated with the Branning action for purposes of discovery and trial.

¶10. The Plaintiffs settled their claims against Tomlinson Avionics, Inc., the Estate of Michael Tomlinson and Swamel, Inc. On October 1, 1996, Hinds filed its Motion for Summary Judgment and supplemented its Motion on October 4, 1996. The Circuit Court conducted a hearing on the Motion for Summary Judgment on March 24, 1997 and entered an Order granting the Motion and dismissing all claims against Hinds on June 18, 1997. The Plaintiffs filed their Notices of Appeal raising the following issues:

**I. WHETHER HINDS, AS A PUBLIC AIRPORT ADMINISTRATIVE AUTHORITY, OWED APRIL BRANNING A NON-DELEGABLE DUTY TO EXERCISE DUE CARE TO PROTECT HER FROM HARM CAUSED BY FORESEEABLE THIRD PARTIES, IN THIS CASE, ITS OWN AIRPORT MANAGER AND AIRPORT SERVICES PROVIDER, OR "FIXED BASE OPERATOR."**

**II. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT BECAUSE THE BRANNINGS DEMONSTRATED A TRIABLE ISSUE ON WHETHER MICHAEL TOMLINSON OR TOMLINSON AVIONICS, INC. WERE HINDS' AGENTS FOR OPERATING THE AIRPORT, AND, THEREFORE, HINDS COULD BE FOUND VICARIOUSLY LIABLE UPON A FULL TRIAL OF THE CASE.**

**III. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT BECAUSE THE BRANNINGS' CLAIMS DO NOT FALL WITHIN THE "DISCRETIONARY FUNCTIONS" OR "CRIMINAL ACTS" EXCEPTIONS TO THE WAIVER OF SOVEREIGN IMMUNITY UNDER THE MISSISSIPPI TORT CLAIMS ACT.**

**IV. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT AND FAILING TO GRANT A REASONABLE AWARD OF ATTORNEY'S FEES BECAUSE THE BRANNINGS HAD DEMONSTRATED DISPUTED FACTS ABOUT GENUINE ISSUES**.

## STANDARD OF REVIEW

¶11. Rule 56(c) of the Mississippi Rules of Civil Procedure allows summary judgment where there are no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. To prevent summary judgment, the non-moving party must establish a genuine issue of material fact by means allowable under the rule. *Hernandez v. Vickery Chevrolet-Oldsmobile Co., Inc*., 652 So. 2d 179, 181 (Miss. 1995). This Court will review de novo a decision to grant summary judgment. *Nationwide Mut. Ins. Co. v. Garriga,* 636 So. 2d 658, 660 (Miss. 1994). If any triable issues of material fact exist, the lower court's decision to grant summary judgment will be reversed. Otherwise, the decision is affirmed. *Brown v. Credit Center, Inc.,* 444 So. 2d 358, 362 (Miss. 1983). This Court, however, views the evidence in the light most favorable to the non-moving party. *Turner v. Johnson,* 498 So. 2d 389, 390 (Miss. 1986).

## LEGAL ANALYSIS

**I. WHETHER HINDS, AS A PUBLIC AIRPORT ADMINISTRATIVE AUTHORITY, OWED APRIL BRANNING A NON-DELEGABLE DUTY TO EXERCISE DUE CARE**

**TO PROTECT HER FROM HARM CAUSED BY FORESEEABLE THIRD PARTIES, IN THIS CASE, ITS OWN AIRPORT MANAGER AND AIRPORT SERVICES PROVIDER, OR "FIXED BASE OPERATOR."**

**II. WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT BECAUSE THE BRANNINGS DEMONSTRATED A TRIABLE ISSUE ON WHETHER MICHAEL TOMLINSON OR TOMLINSON AVIONICS, INC. WERE HINDS' AGENTS FOR OPERATING THE AIRPORT, AND, THEREFORE, HINDS COULD BE FOUND VICARIOUSLY LIABLE UPON A FULL TRIAL OF THE CASE.**

¶12. In their first two assignments of error, the appellants contend that by statute, Hinds is deemed a "municipality" operating the airport. Citing ***Clark v. St. Dominic-Jackson Mem. Hosp.***, 660 So. 2d 970 (Miss. 1995), the appellants state that Mississippi requires all persons to exercise reasonable care in preventing foreseeable injuries to persons coming within the zone of danger.

¶13. The appellants argue that traditional negligence rules apply to aviation and "due care" requires a higher degree of caution because of the gravity of the potential harm capable of being inflicted by aircraft. Further, the appellants state that in applying the ordinary negligence principles to municipal operations, the duty to take due care in its operations has long been viewed as non-delegable.

¶14. The appellants state that while there are no Mississippi cases specifically addressing the delegation of airport operations, there is no obvious reason to create an exception for airports. Examples given by the appellants are: the operation of wharves by a city carries with it the non-delegable duty to maintain and inspect. *See*, *e.g.*, ***Warner v. City of Bay St. Louis,*** 408 F. Supp. 375 (S.D. Miss. 1975), *aff'd* 552 F.2d 583 (5th Cir. 1997). Relying on cases from other jurisdictions the appellants state that other federal courts have denominated the duty of care in operating airports as non-delegable. ***Colmenares Vivas v. Sun Alliance Ins. Co.,*** 807 F. 2d 1102 (1st Cir. 1986) (applying Puerto Rico law); ***Indamer Corp. v. Crandon,*** 196 F. 2d 5 (5th Cir. 1952) (applying Florida law).

¶15. Generally, the appellants contend, a duty is not delegable to another person because of the nature and importance of the duty. In this case, the appellants argue that Hinds included FAA regulations as part of its Airport Manager contract. Further, the appellants state that while these rules may not be coterminous with "due care" Hinds' failure to comply with the rules would be some evidence of negligence, and might amount to negligence per se.

¶16. The appellants contend that the main consideration is the importance of the duty to the public. Given Hinds' awareness of the gravity of potential harm and its status as a public steward, Hinds' duty to operate the airport in a reasonably safe manner is not delegable.

¶17. In essence, the appellants claim that 1) that Hinds owed a duty to supervise and limit the methods of promoting its airport to prohibit its airport manager from soliciting gratuitous flights; 2) that Hinds owed a non-delegable duty, as airport authority, to instruct and warn all potential passengers of the hazards of flying with someone who had been drinking as well as other hazards; 3) that Hinds owed a duty to monitor and supervise the adherence of its airport manager to applicable safety rules, including operation within appropriate hours; and 4) that Hinds owed a duty to take reasonable care in designating an airport manager who would exercise reasonable care in executing his or her official duties, including closing the airport to

any pilot wishing to leave late in the evening after drinking.

¶18. The appellants claim the they were entitled to rely on Hinds to see that its airport was operated and promoted in a reasonably safe manner. Michael Tomlinson produced a brochure promoting the airport and Tomlinson Avionics. The brochure stated that Michael Tomlinson was manager of Tomlinson Avionics of MS and contained the business hours of the airport and stated that Michael could be reached after hours and gave a pager number. The brochure was seen by a member of Hinds' Board but there was no approval or disapproval of the brochure.

¶19. The appellants argue that Hinds was under a duty to make reasonable inspection and supervision of the airport and prevent injuries occasioned by the negligence of others where that negligence could be reasonably foreseen and guarded against.

¶20. Further, the appellants argue that Hinds also failed to monitor Michael Tomlinson Avionics's compliance with safety requirements in that the contractually required "safety committee" never met and could not meet because it did not exist.

¶21. In the language of the law of negligence, according to the appellants, enough evidence has been produced which, if believed, tends to show that Hinds' failure to comply with its own regulations set into motion events which could have been anticipated. The causal relation is, therefore, unbroken. The appellants cite *M&M Pipe & Press. Vessel Fab., Inc. v. Roberts,* 531 So. 2d 615 (Miss. 1988) for the proposition that in Mississippi, a defendant is liable for the natural and probable consequences of the defendant's negligent omissions to act where the defendant has a duty to act. Injuries are not considered too remote if the injury could be reasonably foreseen.

¶22. Finally, the appellants contend that Michael Tomlinson, in his official capacity as Hinds' airport manager, with operational control of the airport, failed in his duty to enforce Hinds' rules, and federal and state law. This is a non-delegable duty owed by Hinds to each of Michael Tomlinson's passengers.

¶23. The appellee argues that to establish negligence under Mississippi law, the appellants must prove that Hinds owed a duty to them and breached that duty. Appellee cites *Doe v. Cloverleaf Mall,* 829 F. Supp. 866, 870 (S.D. Miss. 1993) for the proposition that a negligence action lies only where there is a duty owed by the defendant to the plaintiff. Further, the appellee contends that appellants must prove a breach of duty and a proximate causal connection between the alleged breach and their damages.

¶24. The appellee contends that there is no evidence to satisfy the first three elements necessary to prove negligence. First, appellee argues that appellants have not identified the duty allegedly owed by Hinds to them. Private pilots fly into and out of the airport at all hours on a daily basis. Appellee states that Michael Tomlinson had a private pilot's license and flew a plane owned by Tomlinson Avionics, Inc., not Hinds. The appellee contends that the only rule broken by Michael Tomlinson was that he violated FAA regulations against flying within eight hours of consuming alcohol.

¶25. Appellee contends that appellants seek to impose the duty to regulate and monitor the pre-flight activities of pilots, and if circumstances warrant, prohibit pilots from departing the airport. Appellee notes that pilots can do a variety of things to potentially endanger themselves and their passengers such as flying in bad weather, flying in poorly equipped or maintained aircraft, flying without proper experience or licenses because of lack of training or flying time, and flying aircraft without proper instrument rating.

¶26. Further, appellee argues that even if Hinds owed a duty of care to the appellants, there is no proof of breach or that such breach proximately caused their damages. Appellee contends that this tragic accident was caused by a lack of judgment by Michael Tomlinson and the appellants, or some other unknown circumstance that occurred in Tomlinson's aircraft on the night of October 25, 1994. Appellee further states that Hinds Community College is not the insurer of the safety of all passengers who fly in aircraft departing the John Bell Williams Airport.

¶27. To determine whether Hinds owed a duty to take due care to the plaintiffs, the relationship between Hinds and Tomlinson must first be established. There are three types of situations in which a party principal may seek to have someone else perform service for him: 1) principal and agent, 2) master and servant, and 3) independent contractor. *Richardson v. APAC-Mississippi, Inc.,* 631 So. 2d 143, 147 (Miss. 1994).

¶28. The main concern in this case is whether this was a employer/employee relationship or an independent contract. An employee is a person employed by an employer to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the employer. An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor is subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. *Id.* at 148. Rest. Agency, § 2, pars. 2 and 3, p. 11.

¶29. Distinguishing the two has long been difficult. In the case of *Kisner v. Jackson*, 159 Miss. 424, 132 So. 90 (1931), this Court noted:

> There have been many attempts to define precisely what is meant by the term "independent Contractor"; but the variations in the wording of these attempts have resulted only in establishing the proposition that it is not possible within the limitations of the language to lay down a concise definition that will furnish any universal formula, covering all cases. At last, and in any given case, it gets back to the original proposition whether in fact the contractor was actually independent. Id. at 427-28, 132 So. at 91. Then the Court added: There are several tests to be applied, the weight of each, and whether much or little, rising or falling in the scale as it may not be counterbalanced by one or more of the remaining tests, present in the particular case at hand. The tests are as follows:

> 1) whether the principal master has the power to terminate the contract at will;

> 2) whether he has the power to fix the price in payment for the work or vitally controls the manner and time of payment;

> 3) whether he furnishes the means and appliances for the work;

> 4) whether he control of the premises;

> 5) whether he furnishes the materials upon which the work is done and receives the output thereof, the contractor dealing with no other person in respect to the output;

> 6) whether he has the right to prescribe and furnish the details of the kind and character of the work to be done;

> 7) whether he has the right to supervise and inspect the work during the course of employment;

8) whether he has the right to direct the details of the manner in which the work is to be done;

9) whether he has the right to employ and discharge the sub-employees and to fix their compensation; and

10) whether he is obliged to pay the wages of said employees.

159 Miss. at 428-29, 132 So. at 91.

¶30. Pursuant to a long-term lease between Hinds Community College and Hinds County, Hinds Community College operates the airport for the benefit of the general public. Historically, Hinds has contracted with independent fixed-base operators and airport managers for the management of the airport. Hinds Community College entered into two contracts with Tomlinson Avionics, Inc. for the provision of fixed base operator and airport manager.

¶31. The duties outlined in the contract for airport manager required the airport manager (Michael Tomlinson) to see that the airport is operated in compliance with all pertinent HCCD rules and regulations as well as those prescribed by the United States of America and the State of Mississippi. Additionally, the contract provided the following: (1)The airport manager shall serve as advisor to the HCCD Airport Committee; maintain a log of aircraft activities of transient aircraft; collect all fees for ramp space and tee hangar rentals. (2) The rates charged for such service shall be fixed by the airport manager with concurrence and approval of HCCD as to their reasonableness. (3) Fees collected by the airport manager are reported and paid to HCCD less a percentage of ramp space fees and tee hangar fees. (4) The airport manager shall appoint and support an Airport Safety Committee and submit a semi-annual written report on all airport activities. (5) Additionally the airport manager is required to maintain the upkeep of the facility. (6) HCCD leased unto Tomlinson Avionics as a Full Fixed Base Operator a part of the John Bell Williams Airport. (7) Tomlinson Avionics agreed to operate the leased premises for the use and benefit of the public. (8) HCCD shall annually have the option and authority to cancel this Lease on the anniversary date thereof upon 120 days written notice to Lessee prior to the date of said cancellation.

¶32. The entire contractual agreement between Hinds and Tomlinson Avionics with regard to the maintenance and operation of the Airport is comprised in the contracts. On the day of the accident, Michael Tomlinson was an employee of Tomlinson Avionics, Inc. Tomlinson Avionics, Inc. is a company that is in the business of managing airports and providing avionics repair on aircraft. Tomlinson Avionics, Inc., based in Arkansas, has provided airport management services, avionics repair and other services to the public as a fixed-base operator in both Arkansas and Mississippi.

¶33. As per the contract, Hinds paid Tomlinson Avionics $50.00 per month as payment for airport management services. Tomlinson retained a specified portion of all hanger fees as compensation for management services. The FBO contract required Tomlinson Avionics to provide fixed-base operator services to the public in which Tomlinson Avionics agreed to operate the Airport for the use and benefit of the public and to make available to the public on fair and reasonable terms all leased airport facilities. Tomlinson Avionics paid rent to Hinds in the amount of $650 per month to operate as a fixed-base operator.

¶34. Tomlinson Avionics had control to determine the method by which it fulfilled the contracts. That control included the (1) exclusive right to select, train, supervise, direct and discipline its employees in

fulfillment of the terms of the contracts, (2) the right to hire and fire its employees, and (3) the right to set the terms, conditions and hours of employment for its employees who performed duties under the contracts. Hinds did not control how the contractual work was done. Further, Hinds did not fix compensation or hours of employment of Tomlinson employees nor did Hinds pay their wages or advance money to the Tomlinson employees. The contract required Tomlinson Avionics to purchase liability insurance and Tomlinson provided Hinds with a copy of a Certificate of Insurance for $1,000,000 that named Tomlinson Avionics as insured.

¶35. The record reveals that the plane piloted by Michael Tomlinson was owned by Tomlinson Avionics, Inc. Hinds did not operate or have any ownership interest in the Tomlinson aircraft. The contracts do not provide Tomlinson Avionics with the right or obligation to engage in promotional activities on behalf of Hinds. The contracts do not provide Tomlinson Avionics with the obligation to take members of the public on flights on behalf of Hinds. Finally, the contracts do not provide Tomlinson Avionics with the obligation to regulate the conduct of pilots who rent hanger space and fly into and out of the airport.

¶36. Beyond the contracts, the affidavits of the President and Vice President of Hinds show that between themselves they intended that their relationship be that of principal and independent contractor. The conduct of the parties was also that of principal and independent contractor. An employer of an independent contractor is not responsible for the torts of the contractor. *Blackmon v. Payne,* 510 So. 2d 483, 488 (Miss. 1987); *Richardson v. APAC-Mississippi, Inc.,* 631 So. 2d 143 (Miss. 1994). The general rule is that the employer of an independent contractor has no vicarious liability for the torts of the independent contractor or for the torts of the independent contractor's employees in the performance of the contract. *Mississippi Power Co. v. Brooks,* 309 So. 2d 863, 866 (Miss. 1975); *Smith v. Jones,* 220 So. 2d 829 (Miss. 1969).

¶37. In determining whether a employer-employee or independent contractor relationship existed, especially where third parties are affected, courts are not confined to the terms of the contract, but may look as well to the conduct of the parties. *Richardson v. APAC- Mississippi, Inc.,* 631 So. 2d 143, 151 (Miss. 1994); *Miss. Employment Sec. Comm'n v. Total Care, Inc.,* 586 So. 2d 834, 838 (Miss. 1991) ; *Leaf River Forest Products, Inc. v. Harrison,* 392 So. 2d 1138, 1141 (Miss. 1981); *Miss. Employment Sec. Comm'n v. Logan*, 248 Miss. 595, 600, 159 So. 2d 802, 804 (1964). After analyzing the two contracts and examining the facts applicable as "to the conduct of the parties", we hold that the relationship between the two parties is that of independent contractor. *Richardson*, 631 So. 2d at 151.

¶38. Appellants have shown no duty owed and further no breach of a duty. In finding that Tomlinson was an independent contractor of Hinds, the lower court was correct in granting summary judgment and therefore the remaining issues need not be addressed.

## CONCLUSION

¶39. An independent contractor relationship existed between Hinds Community College District and Tomlinson. Therefore, we affirm the judgment of the Hinds County Circuit Court.

¶40. **JUDGMENT AFFIRMED.**

**SULLIVAN AND PITTMAN, P.JJ., BANKS, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY. PRATHER, C.J. AND COBB, J., NOT PARTICIPATING.**