# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00870-SCT

*RHONDA MASSEY*

*v.*

*ROSS TINGLE d/b/a COLUMBUS SPEEDWAY AND*
*JOHN DOES 1-5*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/30/2002 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN W. BOLING |
| | CHRISTOPHER MICHAEL FALGOUT |
| ATTORNEY FOR APPELLEES: | PATRICK H. ZACHARY |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED- 03/04/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### SMITH, P.J., WALLER, P.J., AND CARLSON, J.

### SMITH, PRESIDING JUSTICE, FOR THE COURT:

¶1. Rhonda Massey appeals to this Court from a Lowndes County Circuit Court order granting Ross Tingle's motion for summary judgment. The trial court relied on a broad waiver of liability giving notice to the plaintiff and other persons entering the pit area of a race track that a racing event is dangerous and may involve risk of injury or death. The trial court also held that such danger is open and obvious. Finally, the trial court held in the alternative that Massey's injuries were not proximately caused by any alleged breach of duty by the Tingle.

### FACTS

¶2. The plaintiff, Rhonda Massey ("Massey"), attended a racing event at a dirt track leased by the defendant, Ross Tingle doing business as Columbus Speedway ("Tingle"). Massey paid an additional fee to be admitted to the pit area. She also signed a "Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement" ("Waiver") prior to entry. One clause of the Waiver stated the undersigned "HEREBY acknowledges THE ACTIVITIES OF THE EVENT(S) ARE VERY DANGEROUS and involve risk of serious injury and/or death and/or property damage." (Emphasis in original).

¶3. While at the Columbus Motor Speedway, Massey agreed to help a friend time a race car. Massey used a stop watch to time the cars, but wanted to see the speedway's time clock so that she could compare her times to the official times. Massey left the pit area in order to see the official clock. The pit area was enclosed by a chain-link fence. There was an open area between the chain-link fence and the track guardrail. She was timing the cars in the area between the chain-link fence and the guardrail when she was injured. There were no designated areas at the speedway for timing cars, but Massey testified she thought that she could have seen the official time clock from the grandstands. She was fully aware the cars were traveling around the track at speeds of up to one hundred miles per hour. Moreover, she stated that one could see the track from the grandstands.

¶4. An out-of-control race car struck the guardrail. The guardrail struck Massey, and she suffered serious injuries. The car did not, however, enter the fenced-in pit area. Massey contends that Tingle was negligent in the following respects: failing to construct the guardrail of a material strong enough to sustain the weight placed upon it; failing to furnish her with a safe place to view the race; allowing her to be in an unreasonably dangerous area; and failing to warn her that the area of the premises where she was injured was unreasonably dangerous.

¶5.     Massey has been attending racing events for more than fifteen years.  She has seen over one hundred races and has been admitted to the pit area between eighty-five and ninety times.  It appears that each time Massey was admitted to the pit area, she was required to sign "something."  Massey denies ever reading this waiver specifically or any prior release in the sixteen years she has been attending races.  The trial court found there was no genuine issue of any material fact, and, therefore, granted summary judgment to Tingle.  Massey raises the following issues on appeal:

> I.     **WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF TINGLE.**
>
> II.    **WHETHER THE LANGUAGE USED IN THE WAIVER IS AGAINST PUBLIC POLICY.**
>
> III.   **WHETHER TINGLE HAD A DUTY TO WARN MASSEY OF AN ALLEGEDLY UNREASONABLY DANGEROUS CONDITION.**
>
> IV.    **WHETHER THE DOCTRINE OF ASSUMPTION OF RISK BARS MASSEY'S CLAIMS.**
>
> V.     **WHETHER THE TRIAL COURT ERRED IN FINDING MASSEY'S DAMAGES WERE NOT PROXIMATELY CAUSED BY A BREACH OF ANY DUTY TINGLE OWED MASSEY.**

## STANDARD OF REVIEW

¶6.     This Court's standard of review regarding motions for summary judgment is well established.  We review summary judgments de novo.  *Hardy v. Brock*, 826 So. 2d 71, 74 (Miss. 2002) (citing *Heirs and Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist.*, 743 So. 2d 311, 314 (Miss. 1999)).  The facts are viewed in light most favorable to the nonmoving party.  *Id.* (citing *Robinson v. Singing River Hosp. Sys.*, 732 So. 2d 204, 207 (Miss. 1999)).  The existence of a genuine issue of material fact will preclude summary judgment.  *Id*.  The non-moving party may not rest upon allegations or denials in the pleadings but must set forth specific facts showing that there are

genuine issues for trial. *Id.* (citing *Richmond v. Benchmark Constr. Corp.*, 692 So. 2d 60, 61 (Miss. 1997)).

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF TINGLE.

¶7.     This Court begins its review of the trial court's grant of summary judgment keeping in mind that "[t]he presence of fact issues does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense." *Hudson v. Courtesy Motors, Inc.*, 794 So. 2d 999, 1002 (Miss. 2001) (citing *Simmons v. Thompson Mach. of Miss., Inc.*, 631 So. 2d 798, 801 (Miss. 1994)).

¶8.     First, Massey's complaint alleges that Tingle constructed and maintained the guardrails in a defective and dangerous manner and condition. The complaint also contends that Tingle failed to construct the guardrails of a material strong enough to sustain the weight placed upon them. However, the record does not contain any evidence regarding the construction or maintenance of the guardrails. Likewise, there is no evidence of Tingle's alleged failure to construct the guardrails of material strong enough to sustain the weight placed upon them.

¶9.     M.R.C.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See also* *Boyles v. Schlumberger Tech. Corp.*, 832 So.2d 503, 507 (Miss. 2002); *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So.2d 1206, 1215 (Miss. 2001). Massey simply failed to come

forward with any concrete evidence to support her first two allegations. She clearly did not "set forth specific facts showing that there is a genuine issue for trial" and, therefore, "rest[ed] upon the mere allegations...of h[er] pleadings" with respect to these contentions. The bare statements regarding the guardrail in her complaint and response to Tingle's motion for summary judgment are insufficient, standing alone, to insulate Massey from a summary judgment.

¶10.    The complaint next alleges that Tingle failed to provide Massey a safe place to watch the race. However, viewing the facts in the light most favorable to Massey, it is apparent to us that there is no issue of material fact regarding this contention. Massey admitted that she was not instructed to watch the race from the area between the chain-link fence and the guardrail. In fact, she could have watched the race from the pit area or the grandstands. Massey admitted that the official clock was probably visible from the grandstands. Further, her act of timing the cars was for her own benefit and was not directed in any way by the race track or its staff.

¶11.    Massey's complaint alleges that Tingle negligently allowed her to be in an area that was unreasonably dangerous. The complaint also asserts that Tingle negligently failed to warn her that the particular area of the premises where she was injured was unreasonably dangerous. This allegation is identical to Massey's third assignment of error; therefore, Massey's third issue will be treated here as a sub-part of the summary judgment issue.

¶12.    The analysis of a premises liability case proceeds according to three steps. *Titus v. Williams*, 844 So.2d 459, 467 (Miss. 2003). First, it is necessary to determine whether the injured person is an invitee, licensee, or trespasser. Next, the duty owed to the injured person must be determined. The final step is the determination of whether the landowner breached that duty. *Id.*

5

¶13. In order to create invitee status, there must be a mutually advantageous interaction between the landowner and invitee. *Corley v. Evans*, 835 So. 2d 30, 37 (Miss. 2003). A landowner "is not an insurer of the invitee's safety, but does owe to an invitee the duty 'to keep the premises reasonably safe, and **when not reasonably safe**, to warn **only where there is hidden danger or peril that is not in plain and open view**.'" *Id.* (emphasis added) (quoting *Caruso v. Picayune Pizza Hut, Inc.*, 598 So. 2d 770, 773 (Miss. 1992)).

¶14. Where a person enters the property in question for his or her "own convenience, pleasure or benefit pursuant to the license or implied permission of the owner," he or she is a licensee. *Titus*, 844 So.2d at 467. We have characterized trespassers as follows:

> A trespasser is a person who enters on the property of another without any right, lawful authority, or express or implied invitation, permission, or license, not in the performance of any duty to the owner or person in charge or on any business of such person, but merely for his own purposes, pleasure, or convenience, or out of curiosity, and without any enticement, allurement, inducement, or express or implied assurance of safety from the owner or person in charge.

*Id.* (citing *White v. Miss. Power & Light Co.*, 196 So.2d 343, 349 (Miss. 1967)). Landowners owe licensees and trespassers the same duty, specifically, to refrain from willfully or wantonly injuring them. *Titus*, 844 So.2d at 467.

¶15. Regardless of whether Massey is characterized as an invitee, licensee, or trespasser at the time she was injured after leaving the fenced-in area, we find that there is no material fact issue as to whether Tingle made the premises reasonably safe. Clearly, the fenced-in pit area was reasonably safe, as evidenced by the fact that the out-of-control car which struck the guardrail did not enter the pit area. Moreover, when he took control of the race track, Tingle had repairs done on some of the track guardrails. Further, he installed guardrails in the portion of the track where the accident occurred. Tingle testified that

6

the metal guardrails and supporting posts were a type approved by the State. Moreover, the pit area was enclosed by a chain-link fence.

¶16.     Nor is there any genuine issue of material fact regarding whether Tingle failed to warn Massey that the particular area of the premises where she was injured was very dangerous. First, we find that the speeding cars were in plain and open view. The risk of injury increased when Massey left the fenced-in pit area to time the cars. This increased risk of injury was likewise not a hidden peril, especially since Massey had attended race events for over sixteen years prior to her accident. It is certainly obvious to any person, particularly an experienced race goer like Massey, that a spectator who moves closer to speeding race cars with less protection is subjected to more risk of injury than to one who is further away from the cars with more protection. Massey admitted that she knew the rate of speed at which the cars traveled around the track. She also knew the reason there was a guardrail between the track itself and the designated spectator areas was to prevent cars from leaving the track. Because Massey was in more danger after leaving the fenced-in area, and this danger was not hidden, but open and obvious, we find that Tingle had no duty to warn even if he failed to make the premises reasonably safe.

¶17.     Moreover, "[i]n Mississippi, a person is charged with knowing the contents of **any document** that he executes." ***Russell v. Performance Toyota, Inc.***, 826 So.2d 719, 726 (Miss. 2002) (citing ***J.R. Watkins Co. v. Runnels***, 252 Miss. 87, 96, 172 So.2d 567, 571 (1965)) (emphasis added). *See also **Dunn v. Dunn***, 786 So.2d 1045, 1050 (Miss. 2001) ("a person cannot avoid a written contract which he entered into on the ground that he did not read it or have it read to him"); ***Turner v. Terry***, 799 So.2d 25, 36 (Miss. 2001) ("parties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence"). The warning clause is not printed in fine print - rather, it was printed in bold typeface which could easily be seen, even at a glance. Although Massey admitted

7

that she did not read the document, there is no evidence that she was prevented from reading it had she chosen to do so. In fact, Massey admitted to receiving this document and signing it. She also admitted that on previous occasions she had received other similar documents at racing events and signed them without reading the documents. The document she received at the Columbus Speedway clearly stated that the race activities were dangerous and involved serious risk of injury. Therefore, even if Tingle had the duty to warn Massey, we find that the document Massey executed gave sufficient warnings of the possible danger presented by the race, and she is charged with knowledge of those warnings.

¶18. Accordingly, we find that none of the contentions in this issue has merit. Because our holding as to summary judgment is dispositive of this appeal, we need not consider Issues II, IV, and V.

## CONCLUSION

¶19. For the foregoing reasons, we find that the trial judge did not err in granting summary judgment. Therefore, we affirm the trial court's judgment.

¶20. **AFFIRMED.**

**PITTMAN, C.J., WALLER, P.J., COBB, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. DIAZ AND EASLEY, JJ., NOT PARTICIPATING.**