# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CA-00785-SCT

*KBL PROPERTIES, LLC*
*AND MAZIN A. KALIAN*

*v.*

*MARK S. BELLIN*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/2004 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | JOHN BARNETT TURNER ,JR. |
| | MATTHEW P. CAVITCH |
| ATTORNEYS FOR APPELLEE: | LOUIS FERREE ALLEN |
| | OSCAR CLARK CARR, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED - 03/17/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE COBB, P.J., DICKINSON AND RANDOLPH, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. In this dispute between members of a Mississippi limited liability company the chancery court granted summary judgment for the defendant minority interest member. Concluding that the chancellor misconstrued the operating agreement under the Mississippi Limited Liability Company Act, Miss. Code Ann. §§ 79-29-101 to -1204 (Rev. 2001 & Supp. 2004), we reverse and remand this case for further proceedings.

## BACKGROUND FACTS

¶2.    KBL Properties, LLC was formed as a Mississippi limited liability company on December 31, 2001, with an LLC agreement entitled "Operating Agreement." KBL had three founding members, each of whom initially invested $1 of equity: Mazian A. Kalian, with a financial interest of 40%; Clay Lane, with a financial interest of 30%; and Mark S. Bellin, with a financial interest of 30%. Similarly, Kalian had a governance interest of 40%, Lane had a governance interest of 30%, and Bellin had a governance interest of 30%. [1] Kalian was the manager.

¶3.    At a meeting of the LLC members on March 6, 2003, Kalian and Lane voted to authorize KBL to raise additional equity in the amount of $225,000, and invited all members to invest additional equity. Bellin abstained from the vote, while Kalian and Lane agreed to invest more equity and together invested $157,500. Bellin did not invest any new equity; and therefore, his contributed capital remained at $1. Under the terms of the operating agreement, Bellin's financial interest declined to 0.00063 percent as a result of the new contributions of

---

[1]KBL's Operating Agreement defined financial interest and governance interest differently. Under the agreement, financial interest is: "each Member's fractional right, expressed as a percentage, to share in the profits, losses, and distributions of the company and to receive interim and liquidation distributions of the Company. Each Member's Financial Interest shall be the amount of such member's contributed capital divided by the aggregate amount of contributed capital for all members."

The agreement defines "governance interest" as "each Member's fractional right, expressed as a percentage, to vote on matters presented to a vote of Members as provided in this agreement, and all other rights and interests of the Member except the member's financial interest and the right to assign such financial interest."

equity capital.[2]   Thereafter, Lane served Bellin with notice of a "buy-sell" offer.[3]   Lane offered to buy Bellin's interest for $6.30 (Bellin's financial interest after Lane and Kalian's equity contributions) or to sell his own interest to Bellin for $428,569.60 (Lane's financial interest after his equity contribution).   Bellin did not respond, but his attorney wrote to Kalian's counsel objecting to the March 6, 2003, resolution and threatening Lane and Kalian with personal liability if the resolution were implemented.

¶4.   Kalian, Lane, and KBL filed suit against Bellin in the Chancery Court of DeSoto County for a declaratory judgment that KBL's raising of additional equity capital was lawfully authorized, Bellin's financial interest was lawfully reduced in accordance with the LLC agreement, Lane had lawfully exercised his buy-sell option, and that Lane was entitled to lawfully purchase Bellin's entire membership interest in accordance with his buy-sell offer. Bellin answered and filed counterclaims.[4] Bellin also filed a motion for summary judgment and argued that (1) that the cash call and dilution resolution of the March 6, 2001, meeting was void, and (2) that Lane's buy-sell offer to Bellin was void.   KBL and Kalian filed a cross-

---

[2]After the new capital contributions made by Kalian and Lane, Kalian's adjusted financial interest was 57.14241 percent, Lane's was 42.85696 percent, and Bellin's was 0.00063 percent.

[3]Section 10.3 of the operating agreement provides that any member (here, the "offeror") has the right at any time to serve another member (here, the "offeree") a notice containing an offer to sell the offeror's entire Membership Interest, or to purchase the offeree's entire Membership Interest.  The selling/purchasing price in this offer must be computed based upon the value of the financial interest, as defined in footnote 1, *supra* .  The offer is irrevocable for sixty days, during which the offeree may accept (either to sell or buy). If the offeree fails to accept within sixty days, the offer automatically expires.  However, upon the expiration of the offer, for a period of fifteen days, the offeror has the right to purchase the interest of the offeree at the price specified in the original offer, in which case the offeree is required to sell.

[4]A separate trial was later held on Bellin's counterclaims, but neither those proceedings nor Bellin's counterclaims are the subject of this appeal.

motion for summary judgment, seeking dismissal of Bellin's claims, and judgment as a matter of law on all issues. The chancellor held a hearing on the competing summary judgment motions and granted summary judgment in favor of Bellin on both issues, that is, the chancellor found that the operating agreement and the Mississippi Limited Liability Company Act required unanimous consent of all parties before any mandatory capital contributions could be required, and that, therefore, the cash call resolution of March 6, 2003, was void on its face. The chancellor further found that Lane's "buy-sell" offer to Bellin was void.[5] The chancellor denied the cross-motion for summary judgment filed by KBL, Kalian, and Lane.[6] Subsequently, the chancellor certified as final the order granting summary judgment under Rule 54(b) of the Mississippi Rules of Civil Procedure. KBL and Kalian[7] now appeal the chancellor's judgment.

## STANDARD OF REVIEW

---

[5]Specifically, the order granting summary judgment stated, in pertinent part:

> That the operating agreement of KBL, LLC, and the Mississippi Limited Liability Company Act require unanimous consent of all parties before any mandatory capital contributions may be required. That the contract provisions of the operating agreement for the corporation are unambiguous. Accordingly, the required cash call resolution dated March 6, 2003, is void on its face. Accordingly, the defendant, Mark S. Bellin, is hereby entitled to summary judgment as a matter of law pursuant to Rule 56 of the Mississippi Rules of Civil Procedure with respect to that issue. Further, inasmuch as the offer of Plaintiff Clay Lane does not constitute a valid "buy-sell"offer as set forth in Sections 10.3 and 10.6 of the operating agreement, said offer is void under the terms thereof. The defendant is likewise entitled to summary judgment on this issue.

[6]The chancellor's refusal to grant summary judgment to KBL, Kalian, and Lane is not raised on appeal.

[7]The record shows that in the proceedings in the court below, Lane was represented by his own counsel. Lane has not filed an appeal.

4

¶5. This Court reviews summary judgments de novo. *Massey v. Tingle*, 867 So.2d 235, 238 (Miss. 2004) (citing *Hardy v. Brock*, 826 So.2d 71, 74 (Miss. 2002); *Heirs and Wrongful Death Beneficiaries of Branning ex rel. Tucker v. Hinds Cmty. Coll. Dist*., 743 So.2d 311, 314 (Miss.1999)). The facts are viewed in the light most favorable to the nonmoving party. *Id.* (citing *Robinson v. Singing River Hosp. Sys*., 732 So.2d 204, 207 (Miss.1999)). The existence of a genuine issue of material fact will preclude summary judgment. *Id.* The non-moving party may not rest upon allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial. *Id*. (citing *Richmond v. Benchmark Constr. Corp.*, 692 So.2d 60, 61 (Miss. 1997)).

## ANALYSIS

### I. Motion to Strike Attachment to Appellants' Brief

¶6. As a preliminary matter, we must address Bellin's Motion to Strike Attachment to Appellants' Brief.[8]

¶7. KBL and Kalian attached to their brief a transcript of a special joint meeting of members and manager of KBL that occurred on March 6, 2003. This transcript in its entirety[9] was not part of the original record, but Kalian submits it with the following comment:

> (The Record contains an incomplete version of the court reporter's Transcript of the March 6, 2003 Special Joint Meeting of Members and Manager. The entire Transcript was admitted into evidence at the September 7, 2004 trial on Bellin's counterclaim. Accordingly, the entire Transcript is attached.)

---

[8]Additionally, pursuant to M.R.A.P. 10(e), the record is corrected to include the pages of the complaint inadvertently omitted and to correct the error in page numbering to which the parties stipulated.

[9]The record on appeal contains nine pages of the transcript of the March 6, 2003, meeting. The remaining pages of the transcript are not part of the record on appeal, but Kalian and KBL submit that the entire transcript should be considered by this Court.

Bellin argues that under Mississippi Rule of Appellate Procedure 10 the transcript pages were not part of the record in the chancery court, and therefore not considered by the chancellor when ruling on the summary judgment motions, should not be considered by this Court.

¶8.     We will not consider the transcript pages not part of the record attached to KBL and Kalian's brief.  Rule 10 of the Mississippi Rules of Appellate Procedure states:

> **(f) Limit on Authority to Add to or Subtract From the Record.** Nothing in this rule shall be construed as empowering the parties or any court to add to or subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal.

The comment to Rule 10(f) states: "Subdivision (f) clearly states that the flexible procedures of this rule are not intended to permit a party to augment the record with matters entered ex parte."  M.R.A.P. 10 cmt. This appeal is limited to the issue of whether the trial court correctly granted summary judgment in favor of Bellin, and these transcript pages were not available to the trial court when it determined the merits of the summary judgment motion.   Therefore, we grant Bellin's motion to strike and will not consider either the additional transcript pages or address arguments made by Kalian and KBL that reference them.

## II.  The Summary Judgment Order

¶9.     Kalian and KBL argue that summary judgment in favor of Bellin was improper for two reasons:     (i) the raising of additional equity was valid and Bellin's financial interest was properly reduced when he chose not to invest; and (ii) Lane validly invoked the buy-sell provisions to buy out Bellin.   In response, Bellin asserts: (i) the chancellor correctly granted summary judgment to Bellin holding the cash call and dilution resolution void; and (ii). Lane's buy-sell offer to Bellin was void.

6

*i. Was the raising of additional equity valid?*

¶10.    The call for additional capital contributions was valid.   Summary judgment in favor of Bellin on this issue was improperly granted.

¶11.    The March 6, 2003,   resolution was not a mandatory capital call, but was a legitimate request for additional equity that Bellin could have agreed or declined to contribute.    Bellin was given equal opportunity to invest with Kalian and Lane, but he chose not to do so.    The transcript of the March 6, 2003 meeting, demonstrates that Bellin was given a fair opportunity to consider whether to invest additional equity, and that Bellin himself understood this:

> MR. BELLIN:  How about if I say this, because I want to study this stuff and come back and tell you.  Let me say this to you because you'll have my words on the transcript.  I'm all for putting money in.  And the amounts of money that we're discussing are fair and reasonable provided the deals make sense . . . .
> So I am interested in putting that – participating in this group.  But in terms of actually voting on this resolution, you'll have to put me down as abstaining until I can actually evaluate the business opportunities and figure out if this is a smart thing to do . . .
>
> And as I understand it, I have until March 14th to sign your subscription agreement and 17th to fund it . . .
>
> MR. LANE: Right.
>
> MR. BELLIN: Okay.

¶12.    As Kalian and KBL point out, the resolution authorizing the raising of additional equity "entitled," rather than required, members to invest, and it expressly informed each member that the decision not to invest would cause a reduction in his equity interest under Section 1.1(n) of the LLC's operating agreement.[10]   Additionally, any member choosing to invest was required

---

[10]KBL and Kalian do not dispute that a mandatory capital contribution would have been prohibited under Miss. Code Ann. § 79-29-502(1), which states: "A promise by a member to contribute to the limited liability company is not enforceable unless set out in writing signed by the member."

to execute a Subscription Agreement, which repeatedly stated that members were not required to invest; the agreement uses the terms "entitled," "agrees,"and "decision," and provided for sanctions only in the event that a member signed the subscription agreement but then breached it.

¶13.    Furthermore, the LLC operating agreement provided that each member's financial interest was his own contributed capital divided by the aggregate contributed capital for all members.[11]    When Bellin did not contribute more capital, his financial interest was legitimately reduced under the operating agreement.  Bellin, as a party to the LLC agreement, knew that this would occur.  Bellin argues that the capital call was mandatory because he was punished for failing to contribute additional equity by the mandatory dilution of his interest to virtually zero and Lane's ability to acquire his interest for $6.30. However, the provisions of the operating agreement to which Bellin agreed upon formation of the LLC, provided that this would occur.   The legitimate reduction of his financial interest as a result of his choice not to contribute additional capital does not make the resolution mandatory.

¶14.    As the parties agree, the LLC operating agreement has no specific provision on raising additional equity.   However, the fact that the operating agreement does not affirmatively provide for raising additional equity does not mean that doing so is prohibited.  Miss. Code Ann. § 79-29-108(1) provides that an LLC may carry on any lawful business, purpose or activity, subject to the provisions of its certificate of formation and other laws of this state.[12]

---

[11]See footnote 1, *supra*.

[12]Miss. Code Ann. § 79-29-108(1) states: "[s]ubject to the provisions of its certificate of formation and subject to any other laws of this state which govern or limit the conduct of a particular business or activity, a limited liability company may carry on any lawful business, purpose or activity."

KBL's operating agreement does not prohibit raising additional equity, and neither is there is any legal prohibition on such. Under Section 79-29-108(1), KBL could lawfully raise additional equity.

¶15. Bellin argues unsuccessfully that the capital call resolution was void under the Mississippi Limited Liability Act. Bellin points out that Miss. Code Ann. § 79-29-502(3) states: "Unless otherwise provided in the Certificate of Formation or Limited Liability Company Agreement, the obligation of a member to make a contribution . . . may be compromised only by specific consent of all the members." Bellin contends that this resolution is void because there was unanimous consent of the members was not obtained. Bellin attempts to liken this case to *In re Estate of Fitzner,* 881 So.2d 164 (Miss. 2003), which dealt with the obligations of limited **partners** to make capital contributions in a limited partnership. This Court held that a limited partner had no duty to make capital contributions to the partnership, and cited Miss. Code Ann.§ 79-14-502(a). Bellin asserts that the limited partnership statute is virtually identical to the LLC statute: *compare* Miss. Code Ann.§ 79-29-502(1) *with* Miss. Code Ann. § 79-14-502(a).[13] Bellin is correct that the statutes are similar. However, Bellin cites these statutes and *Fitzner* out of context. *Fitzner* and these statutes dealt with the statute of frauds, which is not at issue here. Bellin never promised to contribute to the LLC in writing or otherwise. As stated supra, the capital call was not an obligation but a choice. We find this argument unpersuasive.

---

[13]Section 79-29-502(1) states: "A promise by a member to contribute to the limited liability company is not enforceable unless set out in writing signed by the member."
　　　Section 79-14-502(a) states: "A promise by a limited partner to contribute to the limited partnership is not enforceable unless set out in a writing signed by the limited partner."

9

¶16. Bellin also argues that the capital call and the dilution of his interest constituted amendments to the LLC operating agreement, which require unanimous consent of all members under the operating agreement. Section 12.7 of the operating agreement provides that "any amendment, modification, or change to Articles III or IV . . . must be by a unanimous vote of the Members." Bellin argues that any provision providing for additional capital contributions from members, if one existed, would be contained in Article III of the operating agreement, which is entitled "Capital" and sets forth the rights and obligations of members regarding contributed capital. Bellin maintains that because there is no provision in Article III or elsewhere in the operating agreement providing for additional capital contributions or dilution of a member's interest, the March 6, 2003, resolution constituted an amendment which was void because it did not receive the necessary unanimous approval when Bellin abstained from the vote.

¶17. We are unpersuaded by Bellin's argument. This resolution makes no change or modification to the operating agreement and, therefore, cannot be called an amendment. Thus, the operating agreement's default provision on voting applies, and this resolution could properly be approved by a vote of members holding an aggregate governance interest of at least 51 percent. Kalian and Lane together held 70 percent, and, therefore, properly approved the resolution without Bellin's vote.

¶18. Several provisions of the LLC operating agreement imply that the agreement anticipated that additional capital could be raised. Section 1.1(n) defined financial interests formulaically as a function of each member's relative contributed capital. This provision suggests a possibility of disproportionate capital contributions. Additionally, Section 1.1(k) states that

10

contributed capital "means, with respect to any Member as of any particular time, the cumulative amount of all cash, notes, and other property, tangible or intangible, made by such Member to the Company, less all distributions of Sale or Refinancing Proceeds made by the Company to such Member." The agreement defines contributed capital this way because it anticipated that additional capital could be raised; at the time of the formation of the LLC, each member had contributed one (1) dollar, but this definition refers to "cumulative amount[s] of [] cash . . . and other property." Finally, Section 3.1 refers to members' "initial" capital contributions, which suggests the possibility of subsequent contributions.

¶19.    Bellin's financial interest was properly reduced as a result of the other members' capital contributions in a valid call for the raising of additional equity. Bellin essentially argues that what is not specifically permitted is prohibited, but that is not the law of this state. Summary judgment was improperly granted on this issue.

        ii. Was Lane's buy-sell offer to Bellin valid?

¶20.    Lane's buy-sell offer to Bellin was proper and valid. As we will explain, Lane complied with the requirements of the operating agreement provision which governs buy-sell offers,[14] and therefore summary judgment was improperly granted on this issue.

¶21.    Bellin argues that Lane had no right to make the buy-sell offer to Bellin under the operating agreement, but this is incorrect. Bellin correctly points out that under Section 10.3, an offer to buy the interest of another member must be given together with an offer to sell one's own interest. However, Bellin goes on to argue that Lane's "buy-sell" offer is void because under section 10.6 of the operating agreement, Lane was prohibited from selling his own

_____

[14]Section 10.3 is summarized in footnote 3, *supra*.

interest without written consent of all members. Because he never consented to the sale and/or transfer of Lane's interest, Bellin argues, Lane could not make a valid buy-sell offer. ¶ 22.

While Bellin's reasoning is creative, we are unpersuaded. Section 10.6 of the operating agreement prohibits Lane from "**conveying**" any interest in the LLC. Section 10.3 by definition governs only **offers** to buy/sell. KBL and Kalian correctly point out that Lane made an offer to sell, but did not make a conveyance. Under the language of the operating agreement, only a **conveyance** by Lane required the consent of the other members, and no conveyance occurred here. Furthermore, if Bellin had accepted Lane's offer to sell, Bellin's acceptance would have satisfied the consent of other members requirement under 10.3. Lane's buy-sell offer met the requirements of the LLC's operating agreement, and we therefore hold that summary judgment was improperly granted on this issue.

## CONCLUSION

¶23    The trial court improperly granted summary judgment in favor of Bellin. Accordingly, we reverse the judgment of the Chancery Court of DeSoto County in favor of Bellin, and we remand this case to that court for further proceedings consistent with this opinion.

¶24.    **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND RANDOLPH, JJ. CONCUR. GRAVES, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**