# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-CA-00237-SCT

*LUCILLE OWENS*

*v.*

*DR. KEITH R. THOMAE, DR. WILLIAM N. DIXON, DR. YONG W. KIM AND JOHN DOES*

*1 THROUGH 20*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/1997 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE F. HOLLOWELL, JR. |
| ATTORNEYS FOR APPELLEES: | JAMES A. BECKER, JR. |
| | WHITMAN B. JOHNSON, III |
| | GEORGE QUINN EVANS |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART-09/02/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 09/23/99 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. This case presents a question of the employment status of a surgeon and two resident doctors at the University of Mississippi Medical Center. The trial court held

that all three doctors were employees of the University Medical Center and, thus, were entitled to the protections of the Tort Claims Act. Plaintiff Lucille Owens countered by saying that the doctors were being sued independent of their status as employees of the University Medical Center. The trial court granted summary judgment for the doctors finding that jurisdiction was lacking due to Owens's non-compliance with Miss. Code Ann. §11-46-11 (Supp. 1998).

¶2. We hold that the trial court was correct in determining that Drs. Kim and Dixon were employees of the hospital and that Owens's failure to comply with the Tort Claims Act should result in their dismissal. However, we find that the trial court's ruling with regard to Dr. Thomae's status was premature. Therefore, we reverse and remand to allow Owens further discovery on the issue of Dr. Thomae's status vis-a-vis the hospital.

## STATEMENT OF FACTS

¶3. On November 30, 1995, Owens suffered an accidental stab wound to her right groin while she was at work. She was taken to the University Medical Center where she remained until December 13, 1995. Surgery to repair the wound was performed on the day she was admitted. Surgery was required again the next day, and on December 3, 1995 at which time Defendant Thomae amputated Owens's right leg just below the knee.

¶4. Owens's complaint, filed in the Hinds County Circuit Court on July 7, 1997, alleged that doctors Thomae, Dixon and Kim were "negligent and deviated from the standard of care in failing to diagnose and properly treat the Plaintiff's large thrombus located in one of her arteries" and that this negligence contributed to the loss of her right leg.

¶5. All three doctors filed Motions to Dismiss alleging that Owens failed to comply with the notice and statute of limitations provisions of the Tort Claims Act.

¶6. The trial court's opinion and judgment granting summary judgment was filed December 11, 1997. The court specifically found that the doctors were employees of the University of Mississippi Medical Center and, as such, were entitled to the protection of the Tort Claims Act. Furthermore, the court held that Owens failed to comply with both the notice and the statute of limitations provisions of the Act and, thus, that the court lacked jurisdiction to hear her claims.

¶7. Owens contends that the doctors are not employees of the University Medical Center but are independent contractors and, thus, her case falls under the independent contractor's exception to the Tort Claims Act, Miss. Code Ann. §11-46-1(f). On appeal, Owens claims that the trial court improperly granted the doctors' motions for

summary judgment without allowing her additional time for further discovery to determine the doctors' employment status at the time of her treatment.

¶8. The record reveals that no written request was made for additional time to conduct discovery. However, at the November 24, 1997, hearing on the Motions to Dismiss, Owens explained her need for more time to pursue discovery on the issue of the doctors' status vis-a-vis the hospital:

> Judge, the reason there's no affidavits from the defense - I mean, from the plaintiff in defense of their summary judgment, we haven't been able to complete discovery. This is so premature. I have no way of determining what position any of the doctors may be in because I've not been allowed to depose the persons as well as other persons - the defendants as well as other persons, Mr. Seagrove or whatever status he had, because if you'll notice in Mr. Seagrove's affidavit, he makes no reference to the fact of how he is compensated. As the brief says, it's the contract - we feel like it's an independent contractor, not as an employee of the hospital. "Your Honor, at this time we merely ask you to allow us please to complete our discovery so we can make a determination ourselves whether of not this is a governmental issue or falls under the Mississippi Tort Claims Act. . . .."

Owens indicated that if taking Dr. Thomae's deposition, might enable her to determine Thomae's status with the University.

¶9. The trial court never explicitly ruled on Owens's oral request for a continuance to conduct further discovery. Instead, the trial court issued an opinion finding that the doctors were employees of the University of Mississippi Medical Center and entitled to the protections of the Tort Claims Act. Because Owens failed to comply with the notice provision of the Tort Claims Act and because she filed her lawsuit outside the one-year statute of limitation contained in the Act,[1] the trial court granted summary judgment for the doctors.

## LEGAL ANALYSIS

¶10. The decision to grant or deny a continuance is within the sound discretion of the trial court and will be reversed solely where the court abuses that discretion. *Prescott v. Leaf River Forest Prods, Inc.,* Nos. 96-CA-00942 SCT; 96-CA-00977 SCT; 96-CA-00978 SCT, 1999 WL 605170, at *3 (Miss. Aug. 12, 1999); *Brown v. Brown*, 493 So.2d 961, 963-64 (Miss. 1986).

¶11. A party opposing a motion for summary judgment may request a continuance in order to conduct further discovery pursuant to Miss. R. Civ. Proc. 56(f). Rule 56(f) provides as follows:

When affidavits are unavailable. Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

When a Rule 56(f) continuance is requested, the trial court, "if it finds the reasons offered to be sufficient", has the discretion to "postpone consideration of the motion for summary judgment and order among other things that discovery be completed." *Prescott, supra.* This Court has noted on several occasions that "[t]he rule itself contemplates that the completion of discovery is, in some instances, desirable before the court can determine whether there is a genuine issue of material fact." *Marx v. Truck Renting & Leasing Ass'n, Inc.*, 520 So.2d 1333, 1343 (Miss. 1987) (citing *Smith v. H.C. BaileyCos.*, 477 So.2d 224, 232 (Miss. 1984)). "Justice is served," the Court stated in *Cunningham v. Lanier*, 555 So.2d 685, 686 (Miss. 1989), "when a fair opportunity to oppose a motion is provided -- *because consideration of a motion for summary judgment requires a careful review by the trial court of all pertinent evidence in a light most favorable to the nonmovant."* (emphasis in original).

¶12. An opportunity to flesh out discovery may especially be required where the information necessary to oppose the motion for summary judgment is within the possession of the party seeking summary judgment. *Marx*, 520 So.2d at 1344; 10B Charles Alan Wright & Arthur E. Miller & Mary Kay Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)(Wright & Miller). On the other hand, the "party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, the rebut the movant's showing of the absence of a genuine issue of fact.'" *Prescott*, 1999 WL 605170 at *4.

This is so because Rule 56(f) is not designed to protect the litigants who are lazy or dilatory and normally the party invoking Rule 56(f) must show what steps have been taken to obtain access to the information allegedly within the possession of the other party. 10A Wright, Miller & Kane, *Federal Practice & Procedure*, § 2741 at 549.

*Marx*, 520 So.2d at 1344.

¶13. Several of the cases in which this Court has found that the lower court abused its discretion in denying a Rule 56(f) continuance involve medical malpractice actions. *Erby v. North Miss. Med. Ctr.*, 654 So.2d 495, 503 (Miss. 1995), was a medical malpractice case filed in August, 1989. The hospital filed a motion for summary judgment in December, 1990. Some three weeks after the hearing on the motion (but

before a ruling had been made), the plaintiff filed a motion requesting leave to take additional depositions because of a newly discovered claim against the hospital. The hospital sought and, almost a month later, was granted a protective order disallowing further discovery.

¶14. On appeal, this Court held that the plaintiff should not have been prevented from conducting further discovery with regard to the new claim.

> The trial court failed to render its decision on [the hospital's] motion for a protective order until July 16, 1991. More than ample time passed during which Erby could have completed the two additional requested depositions. Under the circumstances, principles of fairness dictate a decision in favor of allowing these additional depositions which would not have unnecessarily prolonged the proceedings.

*Erby*, 654 So.2d at 503. *See also **Hudson v. Parvin***, 511 So.2d 499, 500 (Miss. 1987);***Terrell v. Rankin***, 511 So.2d 126, 129 (Miss. 1987).

¶15. In the instant case, the complaint was filed in early July and the hearing took place in late November -- some five months apart. In ***Marx v. Truck Renting & Leasing Ass'n, Inc.***520 So.2d 1333, 1344 (Miss. 1987), the Court held that it was not an abuse of discretion to deny a continuance where five months had passed and the plaintiff had failed to conduct any discovery. In this instant case, however, Owens did attempt to obtain information regarding the doctors' relationship with the University.

¶16. In mid-August, 1997, Owens subpoenaed the personnel records of all three doctors. All three filed either a motion for protective order or a motion to quash alleging that the records were privileged and confidential. The record in this case does not disclose what happened concerning the subpoenas. At the very least, though, we can say that Owens was not dilatory in attempting discovery on this issue although she certainly could have pressed for a hearing on the motions for protective order and to quash the subpoenas.

¶17. Owens was not diligent, however, when she failed to file an affidavit in support of her request for a continuance. In ***Smith v. H.C. Bailey Cos.,*** 477 So.2d 224 (Miss. 1985), the Court noted that pursuant to Rule 56(f) a party should file counter-affidavits in opposition to summary judgment. We hesitate to hold that an affidavit is the *sine qua non* for obtaining a Rule 56(f) continuance. A categorical requirement of an affidavit might not comport with the spirit in which Rule 56(f) was drafted. One treatise states that "[t]he purpose of subdivision (f) is to provide an additional safeguard against an improvident or premature grant of summary judgment and the rule generally has been applied to achieve that purpose. Consistent with that purpose, courts have stated that technical rulings have no place under the subdivision and that it

should be applied with a spirit of liberality" 10B Wright & Miller, § 2740, at 402(footnotes omitted).[(2)](#)

> Thus, in certain circumstances, courts have indicated that continuances would be proper even though Rule 56(f) had not been formally complied with when the court concluded that the party opposing summary judgment had been diligent and had acted in good faith.

*Id.* at 402-03 (footnote omitted). *See, e.g.*, ***Krim v. BancTexas Group, Inc.***, 989 F.2d 1435, 1442 (5th Cir 1993) (to obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and how the additional discovery will create a genuine issue of material fact); ***Miller v. Beneficial Management Corp.***, 977 F.2d 834, 846 (3d Cir. 1992) (continuance should have been granted despite party's failure to file affidavit); ***First Chicago Int'l v. United Exchange Co.***, 836 F.2d 1375 (D.C.Cir. 1988). Owens's failure to file a written request setting forth her reasons for desiring a Rule 56(f) continuance may have been ill-advised but it was not fatal to her motion.

¶18. Contested status issues invariably require discovery. The party seeking summary judgment on the grounds that he was not responsible for another's actions typically will be the party in possession of the information necessary to determining whether he is indeed responsible. While summary judgment may be appropriate where the status issue has been fully fleshed out and there are no material issues of fact, ***Webster v. Mississippi Publishers Corp.***, 571 So.2d 946 (Miss. 1990); ***Fruchter v. Lynch Oil Co.***, 522 So.2d 195, 199-201 (Miss. 1988), it cannot be said that the status issue in this case has been fully fleshed out.

¶19. We hold that the lower court was correct in determining that the two residents, Drs. Kim and Dixon, were employees of the hospital and that Owens's failure to comply with the Mississippi Tort Claims Act should result in their dismissal. Drs. Kim and Dixon are student doctors. Dr. Kim is an intern in his first year of residency at UMMC. Dr. Dixon is a resident physician in training there. In ***Walls v. North Mississippi Medical Center***, 568 So. 2d 712 (Miss. 1990), this Court held that a student nurse was an "employee" of the medical center where she trained and worked. *Id.* at 718. *See also* ***Pierce v. Smith***, 117 F. 3d 866 (5th Cir. 1997) and ***Davis v. Mann***, 882 F. 2d 967 (5th Cir. 1989) (acknowledging that a resident physician at a state hospital is an employee of the state). It is therefore clear that as a matter of law these two doctors are "employees" of the state. Hence, no amount of discovery by Owens could possibly change the outcome of their employment status.

¶20. However, we find the employment status of Dr. Thomae is unclear. Further

discovery should have been permitted on the issue of Dr. Thomae's status vis-a-vis the hospital at the time of surgery.

¶21. If Dr. Thomae is found to be an independent contractor, he is not entitled to the protections of the Tort Claims Act. Miss. Code Ann. § 11-46-1(f). The Tort Claims Act, with a few enumerated exceptions, explicitly excludes independent contractors from its provisions. Pursuant to Miss. Code Ann. § 11-46-1(f), the definition of employee excludes "a person or other legal entity while acting in the capacity of an independent contractor under contract to the state of a political subdivision . . . ."*See* ***Womble v. Singing River Hosp.***, 618 So.2d 1252, 1262 (Miss. 1993) (pre-Tort Claims Act case holding that doctors at public hospital are not entitled to qualified common law immunity). The employer of an independent contractor is not responsible for torts committed by the contractor. ***Branning v. Hinds Community College Dist.,*** No. 97-CA-01090-SCT, 1999 WL 444606 (Miss. July 1, 1999); ***Richardson v. APAC-Mississippi, Inc.,*** 631 So.2d 143, 149 (Miss. 1994);*Blackmon v. Payne*, 510 So.2d 483, 488 (Miss. 1987).

¶22. In ***Branning***, we stated:

> The general rule is that the employer of an independent contractor has no vicarious liability for the torts of the independent contractor or for the torts of the independent contractor's employees in the performance of the contract. ***Mississippi Power Co. v. Brooks***, 309 So.2d 863, 866 (Miss. 1975); ***Smith v. Jones***, 220 So.2d 829 (Miss. 1969).
>
> In determining whether a employer-employee or independent contractor relationship existed, especially where third parties are affected, courts are not confined to the terms of the contract, but may look as well to the conduct of the parties. ***Richardson v. APAC-Mississippi, Inc.***, 631 So.2d 143, 151 (Miss. 1994); ***Mississippi Employment Sec. Comm'n v. Logan***, 248 Miss. 595, 600, 159 So.2d 802, 804 (1964). . . .

***Branning,*** 1999 WL 444606 at * 7-8.

¶23. While Owens offered a minimal amount of evidence in opposition to summary judgment, given her request for a continuance in order to conduct discovery on the status issue, coupled with her having previously attempted to conduct discovery on this issue and the fact that the discovery needed was in the possession of the party moving for summary judgment, we find that the trial court erred in not granting a continuance for further discovery on the status issue with regard to Dr. Thomae. For these reasons, we affirm in part and reverse and remand in part for further proceedings consistent with this opinion.

¶24. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ.**

**McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶25. I concur in the majority's reversal of summary judgment for Dr. Thomae for development of the issue of Dr. Thomae's employment status vis-a-vis the University of Mississippi Medical Center while treating Owens. However, I dissent from that part of the majority opinion which upholds the trial court's summary judgment as to Drs. Kim and Dixon. The majority ignores the fact that if Thomae may be an independent contractor, Kim and Dixon, to the extent that they were supervised by Thomae, may also be considered independent contractors and, thus, outside the auspices of the Mississippi Tort Claims Act.

¶26. The majority's treatment of the two residents is conclusory, to say the least. No reason, other than the fact that they are residents, is given for dealing with these doctors differently than Thomae. It is entirely possible that the two residents were treating Owens outside the scope of their employment with the University or that they were the borrowed servants of Thomae. If either is true, then Kim and Dixon, too, could be treated as independent contractors or employees of another independent entity or partnership.

¶27. At the hearing on the motion to dismiss in this case, Owens argued that a provision of the contract between Thomae and the University concerning the allotment of "additional earnings from medical practice" along with Thomae's acknowledgment that at the time of the incident he was a member of the Universal Surgical Association - a general partnership - demonstrated that there was a question as to whether Dr. Thomae was actually an employee of the University at the time he treated Owens. The majority opinion gives Owens time for further discovery so that she may establish the exact capacity in which she was treated by Thomae. If Owens is able to determine that Thomae was working as an independent contractor, to the extent that Kim and Dixon reported to or were supervised by Thomae, it may well be that Kim and Dixon, too, are independent contractors or borrowed servants for purposes of the Tort Claims Act.

¶28. Under our borrowed servant doctrine, a person who is under the employment of one employer may be temporarily loaned to another employer.

> The borrower then becomes the employer to the exclusion of the lender. Application of the rule depends upon the question of whose work is being performed, and if the lender is to escape liability, it must appear that the servant is under the borrower's exclusive control and direction as to the work in progress. When an employee voluntarily accepts and enters upon such an assignment, he ceases to be in the course of the employment by the lender or the general employer. However, while the "loaned servant" doctrine is generally considered applicable in the compensation field, a shift of emphasis will be noted as to three pertinent questions involved, viz.: (1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment.

*Starcher v. Byrne*, 687 So.2d 737, 741 (Miss. 1997) (quoting *Quick Change Oil & Lube, Inc. v. Rogers,* 663 So.2d 585, 589 (Miss. 1995) (quoting Dunn, Mississippi Workers' Compensation Law §186 (1986)). The majority's failure to recognize that the borrowed servant doctrine may apply here indicates that it might well have outlived its usefulness at least insofar as the Tort Claims Act is concerned.

¶29. The possibility also exists that the residents may have professional liability insurance. The statute creating the medical school provides that it shall operated in "accordance with the recommended standards of the Council on Medical Education . . . ." Miss. Code Ann. § 37-115-23 (1996). Specialized bodies, such as the Accreditation Council for Graduate Medical Education (ACGMA) currently have the responsibility of overseeing and regulating residencies on a national basis. The ACGMA promulgates guidelines for resident's contracts. These guidelines are intended to provide "advice" to institutions providing residency training, to resident organizations, and to individual residents. The current ACGMA guidelines provide that "[r]esidents in GME must be provided with professional liability coverage for the duration of training." The guidelines also state that "[t]here must be sufficient institutional oversight to assure that **residents are appropriately supervised.**" I quote these ACGMA provisions not to say that there necessarily is professional liability insurance covering residents Kim and Dixon but in order to show that the status of a resident doctor is more complicated than the majority recognizes.

¶30. As the majority points out, this was not a case that had been lingering on the trial court's docket for any great length of time. The motion for summary judgment in this case was heard a mere five months after the complaint was filed. Furthermore, Owens had attempted to conduct discovery concerning the doctors' employment status only to have her efforts stymied by the defendants. There is no reason for haste here. No

damage can be done to either party or the law by allowing further discovery for as full and complete a development of the actual facts of this case that skillful attorneys may accomplish.

¶31. Because I believe that summary judgment was premature as to all the defendants, I concur in the reversal and remand as to Thomae and dissent in the affirmance of summary judgment for Kim and Dixon. There can be no logical explanation to allow discovery as to the status of one defendant and not the others.

¶32. I would reverse and remand for further discovery as to the employment status of Drs. Kim and Dixon in their treatment of the plaintiff. For the majority to say, in effect, that, as a matter of law, no resident can be working in a dual capacity or have insurance independent of the public entity that would waive sovereign immunity is wrong. For these reasons, I dissent from the majority's upholding summary judgment as to these two defendants.

### SULLIVAN AND PITTMAN, P.JJ., JOIN THIS OPINION.

1. Miss. Code Ann. §11-46-11(3) (Supp. 1998). Effective March 25, 1999, this section was amended to clarify the notice procedure. 1999 Miss. Laws Ch. 469. That amendment has no application to the facts of this case.

2. *Brown v. Credit Ctr., Inc.,* 444 So.2d 358, 364 n.1 (1983), holds that it is appropriate to look at federal law interpreting the federal rules since the Mississippi Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure. See also *Bourne v. Tomlinson Interest, Inc.,* 456 So.2d 747, 749 (Miss. 1984).