# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-IA-01404-SCT

*SHAD WHITE, IN HIS OFFICIAL CAPACITY AS
AUDITOR FOR THE STATE OF MISSISSIPPI*

*v.*

*JERNIGAN COPELAND ATTORNEYS, PLLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/02/2020 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | ARTHUR F. JERNIGAN, JR. |
| | JAMIE DEON TRAVIS |
| | JAMES A. BOBO |
| | J. WADE SWEAT |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARY JO WOODS |
| | STEPHEN FRIEDRICH SCHELVER |
| ATTORNEYS FOR APPELLEE: | JAMIE DEON TRAVIS |
| | ARTHUR F. JERNIGAN, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND RENDERED - 09/01/2022 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KING, P.J., MAXWELL AND GRIFFIS, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Jernigan Copeland Attorneys, PLLC (JCA),[1] a law firm practicing out of Ridgeland,

Mississippi, filed suit against Shad White, in his official capacity as auditor for the state of

Mississippi, seeking to recover damages for services rendered and for the reimbursement of

---

[1]JCA is the successor to Jernigan Copeland & Anderson, PLLC.

costs and expenses owed to a public relations firm based on theories of breach of contract or, alternatively, promissory estoppel, quantum meruit, unjust enrichment, and indemnity. The Circuit Court of Hinds County found that, because discovery had not been completed in the case, genuine issues of material fact remained. Thus, it denied the office of the state auditor's (OSA) motion to dismiss or, alternatively, for summary judgment. Because JCA failed to submit evidence creating a genuine issue of material fact that the employment contract complied with statutory requirements, and because JCA's alternative claims are barred by the applicable statute of limitations, we reverse the trial court's denial of summary judgment.

### FACTS AND PROCEDURAL HISTORY

¶2. In 2012, JCA and the law firm of Chhabra & Gibbs, P.A. (Chhabra) approached then-State Auditor Stacy Pickering regarding a proposal to recover attorneys' fees received by a group of Mississippi and out-of-state attorneys (collectively, the "Tobacco Lawyers") in connection with state and national tobacco products litigation. The attorneys' fees had been paid to the Tobacco Lawyers for more than twenty-five years and exceeded $1 billion. On January 15, 2013, Chhabra and Auditor Pickering, for and on behalf of the OSA and the State, entered into a memorandum of understanding. The purpose of the agreement was "to memorialize an understanding between the parties regarding taking the necessary steps to potentially pursue and collect funds that may be rightfully owed to the State of Mississippi by the lawyers who handled what is commonly known as 'The State of Mississippi Tobacco Litigation.'" The memorandum stated that the parties agreed that Chhabra would put together

2

a litigation team and that Arthur F. Jernigan, Jr., should be included as part of the team.

¶3.     On November 8, 2013, JCA entered into a Counsel Retention Agreement (retention agreement) with the State through the OSA. The retention agreement stated that "the State Auditor has requested the Attorneys to represent the State on a contingent fee basis pursuant to Sec. 7-5-1, et seq., and to take any actions reasonably necessary or appropriate to pursue and resolve the Claims . . . ." The retention agreement further stated that

> (B) The State Auditor and the Attorneys both recognize that the Claims present numerous factual and legal obstacles, and that no assurance of success or recovery on the Claims has been or can be made.
>
> . . . .
>
> (D) Notwithstanding the potential difficulties associated with handling and resolution of the Claims, the Attorneys have agreed to represent the State of Mississippi and the State Auditor who hereby agree that the Attorneys will be compensated for their legal services, work, expenditure of time or money, and all other efforts from and after the date of this agreement, on the following bases:
>
> (1) Fee Arrangements. Subject to the terms and conditions of Paragraph No. IV(D)(3) hereof, the Attorneys shall receive and be paid an aggregate fee based upon the applicable specified percentage(s), as set forth on Exhibits "A" and "B" annexed hereto, of any Recovery (as defined herein) awarded, paid, owed or attributed to and/or allocated, recovered or received by, the State Auditor, the State of Mississippi, or its citizens, as a result of or arising from any litigation, transactional arrangement(s), arbitration or other proceedings or processes of any kind or character culminating in resolution of the Claims.
>
> . . . .
>
> (2) Out-of-Pocket Expenses. All reasonable and necessary costs and expenses of litigation or other dispute resolution procedures or processes, including, but not limited to, court costs, travel expenses, witness fees, costs for court reporters, costs for copies or reprographic services, delivery, mailing(s) and overnight courier services, on-line legal or other research costs, fees and expenses for experts, consultants, accountants, arbitrators, mediators and/or

3

other providers of technical or scientific or other services and all other related costs, expenses or expenditures made or incurred in relation to any proceedings or processes referenced in or contemplated by Paragraph No. III hereof ("out-of-pocket expense"), as may be approved by the State Auditor and the Attorneys, shall be initially borne or funded entirely by the Attorneys, but shall, except as provided in Paragraph No. IV(D)(3) hereof, be reimbursed to the Attorneys exclusively from funds or other elements of value comprising the gross proceeds or payments made or to be made to, or the benefits or values conferred or to be conferred upon, or for the benefit of, the State by virtue of any Recovery before deduction of fees owed or paid to the Attorneys pursuant to Paragraph No. IV(D)(1) hereof . . . .

(3) Quantum Meruit Arrangements. Apart from the fee and expense reimbursement agreements set forth in Paragraph Nos. IV(D)(1)&(2) hereof, and notwithstanding any terms, conditions, provisions, or any other matters addressed herein to the contrary, the Attorneys shall be entitled to receive and shall be paid for (a) reimbursement for all out-of-pocket expense and (b) fees equal to the product of (i) the aggregate hours posted or billed by the Attorneys (including attorneys associated under Paragraph IV(E) hereof) multiplied by (ii) reasonable hourly rate(s) charged by experienced, qualified counsel in similar or comparable cases (such entitlement and payment being referred to as "Quantum Meruit Arrangement") in the event that (x) the State, acting through the State Auditor or otherwise, limits, suspends or terminates the Attorneys' representation or withdraws from or ceases for any reason the prosecution or pursuit of the Claims or Recovery of any relief of any kind or character in any forum or that (y) any Recovery awarded, paid, owed or attributed to and/or allocated, recovered or received by the State, or its citizens, does not include or involve a monetary sum or formula or is otherwise based upon or results in non-monetary values, elements or terms. In the event that this provision regarding Quantum Meruit Arrangements is triggered by the events set forth in subparagraphs (x) and/or (y) hereof, the State Auditor agrees to cooperate reasonably with the Attorneys to obtain funding for all such expenses and fees by any measures or means necessary or appropriate, including, but not limited to, any funding available, or which may become available, through State budgetary processes or procedures such as requests for deficit appropriations by or through the State Auditor's office or otherwise.

¶4.    In 2014, Auditor Pickering decided that, because the case had the potential to attract national publicity, a public relations firm would be beneficial to assist the OSA in preparing for news conferences, messaging, and related matters. The complaint stated that Auditor

4

Pickering had selected Xenophon Strategies, Inc., a public relations firm out of Washington, D.C., to assist in the matter. Auditor Pickering and the attorneys agreed that JCA would enter into the contract for services with Xenophon in order to protect communications and assert the attorney-client privilege and work product doctrines as to such communications.

¶5.    JCA entered into a contract with Xenophon on November 1, 2014. From that point to August 2015, Xenophon provided services in relation to the case and sent invoices for payment to JCA. The complaint stated that Auditor Pickering had been advised of the invoices and had assured JCA that the case would proceed, which would provide a means of recovery to pay the Xenophon charges.

¶6.    However, in February 2015, the day before the parties had planned to file the complaint against the Tobacco Lawyers, Auditor Pickering asked the attorneys to delay because he was reconsidering filing the complaint. No payments had been made to Xenophon at that time. In August 2015, Auditor Pickering decided that his office would not pursue the Tobacco Lawyers litigation. Thus, the Xenophon invoices remained unpaid. As a result, Xenophon pursued litigation against JCA in the United States District Court for the District of Columbia. *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61 (D.D.C. 2017). Xenophon obtained a judgment against JCA in the amount of $314,456.37, which increased with attorneys' fees and interest to $442,521.50. The United States Court of Appeals for the District of Columbia Circuit affirmed the judgment. *Xenophon Strategies, Inc. v. Jernigan Copeland Att'ys, PLLC*, 719 F. App'x 10 (D.C. Cir. 2018).

5

¶7.    On May 18, 2018, JCA wrote a notice of claim to the OSA for claims arising out of the retention agreement and memorandum of understanding. On July 17, 2018, the Mississippi Tort Claims Board notified JCA that, based on the facts presented, the claims did not fall within the jurisdiction of the Mississippi Tort Claims Act (MTCA).

¶8.    On October 17, 2018, JCA filed a complaint against Auditor White, in his official capacity as the auditor of the state of Mississippi. JCA claimed breach of contract and demanded judgment against the OSA for the unpaid principal balance of the Xenophon invoices, plus costs, expenses, pre-judgment interest, and post-judgment interest at the contractual rate. In the alternative, JCA requested judgment against the OSA for the fair and reasonable value of the services provided by JCA to the state auditor, plus costs and expenses. Lastly, JCA requested complete indemnification for all expenses, principal, and interest incurred by it with Xenophon.

¶9.    The OSA filed a Motion to Protect Mississippi Taxpayers by Dismissing the Complaint or Alternatively by Granting Summary Judgment and for Additional Relief. The OSA argued that JCA and Auditor Pickering had failed to comply with statutory requirements and that JCA's claims were barred by the statute of limitations.

¶10.    In its response in opposition to the OSA's motion, JCA attached as exhibits emails between Jernigan and Auditor Pickering relating to the Xenophon charges. Included was an email from Jernigan to Auditor Pickering on June 9, 2015, in which Jernigan asked Auditor Pickering if he had spoken with David Fuscus, the chief executive officer and president of Xenophon. Auditor Pickering responded that same day and stated, "Yes, he is forwarding

6

everything to me and he knows I am working to get payments to him. David and I talked again this morning." On September 17, 2015, Jernigan wrote to Pickering, among others, that Xenophon had filed a lawsuit against JCA. Further, on August 2, 2017, Jernigan wrote to Auditor Pickering that Xenophon had obtained a judgment against JCA.

¶11.    Also attached was the affidavit of Auditor Pickering, which stated that he had entered into the retention agreement with JCA and that he had made the decision that a public relations firm would be necessary to handle the publicity. Auditor Pickering confirmed that he asked the attorneys to delay filing the complaint in February 2015 and that in August 2015, he decided not to pursue the litigation. Auditor Pickering stated that Xenophon was notified that the project was over and that JCA had then received a bill for $300,000. Auditor Pickering wrote that he had agreed that if the case was not filed that the OSA would pay Xenophon and that the OSA had the necessary funds to do so. He stated that "[t]his agreement was never reduced to writing, but my counsel had my verbal assurance that it would be done."

¶12.    The Hinds County Circuit Court denied the OSA's motion for summary judgment and found that genuine issues of material fact remained. During the hearing on the motion, the trial court stated that it gave a "tremendous amount of weight" to Auditor Pickering's affidavit. In its order, the trial court stated that it must consider the allegations of the complaint as true and that "[a]t this point no discovery has been taken on any of the issues/allegations in Plaintiff''s complaint to prove otherwise."

¶13.    This Court granted the OSA's petition for interlocutory appeal. On appeal, the OSA

raises the following issues: 1) whether the retention agreement is null and void as a matter of law; 2) whether an implied contract claim, or any viable claim for equitable relief, can be maintained against the State; and 3) whether JCA's equitable claims were filed within the applicable statute of limitations. Because issues one and three are dispositive, this Court declines to address issue two.

## ANALYSIS

¶14.    "A motion to dismiss under Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is reviewed de novo, as it raises an issue of law." *Jourdan River Ests., LLC v. Favre*, 212 So. 3d 800, 802 (Miss. 2015) (citing *Cook v. Brown*, 909 So. 2d 1075, 1077-78 (Miss. 2005)). "Our review is limited to the face of the pleading." *Id.* (citing *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1211 (Miss. 2001)). "The allegations in the complaint must be accepted as true, and the motion should not be granted unless it appears beyond a reasonable doubt that the plaintiff will be unable to prove any set of facts in support of his claim." *Id.* (citing *Rose v. Tullos*, 994 So. 2d 734, 737 (Miss. 2008)).

¶15.    "There is a vast difference between the pleading burden necessary to survive a Rule 12(b)(6) motion to dismiss and the evidentiary requirements necessary to survive a motion for summary judgment under Mississippi Rule of Civil Procedure 56." *Child.'s Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 934 (Miss. 2006). As this Court has stated,

> "If . . . matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56 . . . ."

*City of Meridian v. $104,960.00 U.S. Currency*, 231 So. 3d 972, 975 (Miss. 2017) (alterations in original) (quoting M.R.C.P. 12(c)).

¶16.    The OSA attached documents outside of the pleadings in support of its arguments. Further, JCA attached exhibits outside of the pleadings in its response in opposition to the motion to dismiss. Those documents were not excluded; therefore, the trial court properly treated the OSA's motion as a motion for summary judgment. "A motion for summary judgment is appropriately granted when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Brock*, 337 So. 3d 1053, 1055 (Miss. 2022) (citing M.R.C.P. 56(c)). "Summary judgment should be granted 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting M.R.C.P. 56(c)). Morever,

> [W]hen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

*Id.* (alteration in original) (quoting *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987)). This Court employs a de novo standard of review when reviewing a denial of summary judgment. *Williams v. City of Batesville*, 313 So. 3d 479, 482 (Miss. 2021) (quoting *Boroujerdi v. City of Starkville*, 158 So. 3d 1106, 1109 (Miss. 2015), *overruled on other grounds by Wilcher v. Lincoln Cnty. Bd. of Supervisors*, 243 So. 3d 177 (Miss.

2018)).

**I.     Whether the retention agreement was a nullity as a matter of law.**

¶17.    JCA's breach-of-contract claim is based upon the retention agreement between JCA and Auditor Pickering on behalf of the State. "Under Mississippi law, a plaintiff asserting any breach-of-contract claim has the burden to prove by a preponderance of the evidence (1) that a valid and binding contract exists; and (2) that the defendant has broken or breached it without regard to the remedy sought or the actual damage sustained." *Norman v. Anderson Reg'l Med. Ctr.*, 262 So. 3d 520, 527 (Miss. 2019) (citing *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1225 (Miss. 2012)). "The elements of a contract are '(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) *parties with legal capacity to make a contract*, (5) mutual assent, and (6) no legal prohibition precluding contract formation.'" *Hattiesburg Health & Rehab Ctr., LLC v. Brown*, 176 So. 3d 17, 21 (Miss. 2015) (internal quotation marks omitted) (quoting *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1158 (Miss. 2010)).

¶18.    The OSA first argues that several statutes render the purported contract a nullity as a matter of law. It contends that, even if every alleged fact by JCA is taken as true, Auditor Pickering did not have the authority or legal capacity to enter into the retention agreement on behalf of the State. In contrast, JCA argues that, because it has sufficiently pleaded its claim for breach of contract against the OSA, the OSA's invocation of statutory defenses is premature.

¶19.    The Legislature provides the duties of the state auditor. *State v. Cole*, 81 Miss. 174,

32 So. 314, 315 (1902). This Court has "recognize[d] that government agencies have only such powers that are expressly granted to them, or necessarily implied in their grant of authority. Any acts which are not so authorized are void." *Farrish Gravel Co., Inc. v. Miss. State Highway Comm'n*, 458 So. 2d 1066, 1068 (Miss. 1984) (citing *Strong v. Bostick*, 420 So. 2d 1356, 1361 (Miss. 1982)). "In respect to public contracts 'where a particular manner of contracting is prescribed, the manner is the measure of power and must be followed to create a valid contract.'" *Bruner v. Univ. of S. Miss.*, 501 So. 2d 1113, 1115 (quoting *Am. Book Co. v. Vandiver*, 181 Miss. 518, 528, 178 So. 598, 600 (1938)).

¶20.    Mississippi Code Section 25-1-43 states that "[a]n officer shall not enter into any contract on behalf of the state, or of any county, city, town, or village thereof, without being specially authorized thereto by law or by order of the board of supervisors or municipal authorities." Miss. Code Ann. § 25-1-43 (Rev. 2018).[2] Under Mississippi Code Section 31-7-57(2),

> No individual member, officer, employee or agent of any agency or board of a governing authority shall let contracts or purchase commodities or equipment except in the manner provided by law, including the provisions of Section 25-9-120(3), Mississippi Code of 1972, relating to personal and professional service contracts by state agencies; nor shall any such agency or board of a governing authority ratify any such contract or purchase made by any individual member, officer, employee or agent thereof, or pay for the same out of public funds unless such contract or purchase was made in the manner

---

[2]The OSA cites Mississippi Constitution article 14, section 258, which states that "[t]he credit of the State shall not be pledged or loaned in aid of any person, association, or corporation . . . ." Miss. Const. art. 14, § 258. However, "[a] fair exchange by the State of value for value does not offend the prohibition as to a loan, pledge, or gift of state credit." *Mann Agency, LLC v. Miss. Dep't of Pub. Safety*, 306 So. 3d 656, 665 (Miss. 2020) (internal quotation marks omitted) (quoting 81A C.J.S. *States* § 360, Westlaw (database updated June 2020)).

11

provided by law; provided, however, that any vendor who, in good faith, delivers commodities, printing or services, notwithstanding some error or failure by the agency or governing authority to follow the law, if the contract was for an object authorized by law and the vendor had no control of, participation in, or actual knowledge of the error or failure by the agency or governing authority.

Miss. Code Ann. § 31-7-57(2) (Rev. 2020). Further, an officer of a state agency who causes any contract to be made without complying with any statute of the State "shall be liable, individually, and upon their official bond, for compensatory damages . . . ." Miss. Code Ann. § 31-7-57(3) (Rev. 2020).

¶21. The OSA argues that Auditor Pickering lacked statutory authority to enter into the retention agreement.

### A. Mississippi Code Section 7-7-211

¶22. The retention agreement states that Mississippi Code Section 7-7-211 provided the state auditor with the authority and duty to seek the return of public funds unlawfully withheld from the State. Miss. Code Ann. § 7-7-211 (Rev. 2019). Section 7-7-211(g) specifies that the auditor's office must first make a written demand for recovery of public funds unlawfully withheld. *Id.* In the event that the auditor's written demand is not paid, the statute mandates that the attorney general shall prosecute the case. *Id.*

¶23. The OSA argues that this code section provided no authority for Auditor Pickering to enter into an agreement with JCA to sue the Tobacco Lawyers on behalf of the State. It contends that the record contains no indication that Auditor Pickering made a written demand to the Tobacco Lawyers. Additionally, it argues the complaint contained no allegation that Auditor Pickering attempted to involve the attorney general prior to entering into the

12

retention agreement. Therefore, because the record contains no indication that Auditor Pickering had made a written demand to the Tobacco Lawyers and because Auditor Pickering did not follow the statutory mandate that the attorney general prosecute the suit for the recovery of improperly withheld public funds, the OSA argues that Auditor Pickering and JCA lacked the necessary authority to execute the retention agreement, which rendered the contract null and void.

¶24. JCA argues that no discovery has been conducted in this matter and that the OSA has no basis for making this argument. "[I]f a summary-judgment motion is filed before discovery is complete, the trial court may postpone ruling on the motion to permit depositions to be taken and other discovery to be had." *Brown v. McKee*, 242 So. 3d 121, 127 (Miss. 2018) (internal quotation mark omitted) (quoting *Roberts v. Boots Smith Oilfield Servs., LLC*, 200 So. 3d 1022, 1026 (Miss. 2016)). It contends that a summary judgment motion at this stage is premature and that it should be afforded an opportunity to conduct further discovery on this issue.

¶25. Also, JCA argues that under Mississippi Rule of Civil Procedure 8(a), it was simply required to set forth in its pleading "(1) a short and plain statement of the claim showing that the pleader is entitled to relief, and, (2) a demand for judgment for the relief to which he deems himself entitled." M.R.C.P. 8(a). "Mississippi is a 'notice-pleadings' state; fact pleadings are not required." *City of Meridian*, 231 So. 3d at 975 (quoting *Phillips*, 940 So. 2d at 934). Accordingly,

> [the plaintiff] is not required to plead the specific wrongful conduct. At the pleading stage, he is required only to place the defendant on reasonable notice

13

> of the claims against it and to demonstrate that he has alleged a recognized cause of action upon which, under some set of facts, he might prevail.

*Id.* (alteration in original) (quoting *Phillips*, 940 So. 2d at 934).

¶26.  Although JCA correctly states the notice pleading standard, this Court previously has held that "once a party *files* a motion for summary judgment, the party opposing the motion 'may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.'" *Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1215 (Miss. 2001) (internal quotation marks omitted) (quoting *MST Inc. v. Miss. Chem. Corp.*, 610 So. 2d 299, 304 (Miss. 1992)). "Consequently, it is incumbent upon the plaintiff opposing the motion for summary judgment to set forth, by affidavit or some other form of sworn statement, specific facts which give rise to genuine issues that should be submitted to a jury." *Anglado v. Leaf River Forest Prods., Inc.*, 716 So. 2d 543, 548 (Miss. 1998) (citing *Fruchter v. Lynch Oil Co.*, 522 So. 2d 195, 199 (Miss. 1998)).

¶27.  The OSA submitted in its motion for summary judgment the argument that JCA had failed to comply with Mississippi Code Section 7-7-211. Section 7-7-211 mandates that the attorney general shall prosecute a case for the recovery of public funds. "The Attorney General is the chief legal officer and adviser for the State of Mississippi, both civil and criminal, and is charged with managing all litigation on behalf of the state." *State ex rel. Pittman v. Griffin*, 450 So. 2d 426, 430 (Miss. 1984). Under Mississippi Code Section 7-5-1, the attorney general "is given the sole power to bring or defend a lawsuit on behalf of a state agency . . . ." *Id.* (citing Miss. Code Ann. § 7-5-1 (1972)).

¶28.    JCA attached to its response in opposition Auditor Pickering's affidavit, which stated that he had "agreed to proceed with the Litigation against the Tobacco Attorneys, but required Chabbra and Gibbs to associate Arthur F. Jernigan, Jr., and the firm of [JCA], since Mr. Jernigan had been my lead counsel in the cases involving Langston and Microsoft." It also stated that his office had entered into a retention agreement with JCA to pursue the litigation. However, the affidavit mentioned nothing about compliance with any statutes, about any notice given prior to filing suit, or about any contact with the attorney general that Auditor Pickering might have had.

¶29.    The complaint also does not state that the attorney general had declined to prosecute the case. Instead, the complaint stated that JCA and Chhabra had approached Auditor Pickering about pursuing litigation and that the attorneys had entered into the memorandum of understanding as a result. Because the attorney general is required to "act as counsel for any of the state officers in suits brought by . . . them in their official capacity[,]" JCA was required to present evidence that the attorney general was given a chance to perform his duty. Miss. Code Ann. § 7-5-39(1) (Rev. 2019). Absent statutory compliance, the parties had no legal capacity to make a contract. Because JCA failed to rebut the OSA's argument that the parties to the retention agreement failed to comply with the mandates of Section 7-7-211, Section 7-7-211 renders the contract null and void. *See **Ground Control, LLC v. Capsco Indus., Inc.**, 120 So. 3d 365, 371 (Miss. 2013).

¶30.    JCA argued that summary judgment was premature and that it should be allowed to conduct further discovery on this issue. The trial court denied summary judgment and found

15

that discovery had not been taken on any issues in JCA's complaint; therefore, genuine issues of material fact remained in the matter. "The trial-court judgment will be reversed on a decision to grant additional time if abuse of discretion is found." *Vicksburg Healthcare, LLC v. Dees*, 152 So. 3d 1171, 1175 (Miss. 2014) (citing *Owens v. Thomae*, 759 So. 2d 1117, 1120 (Miss. 1999)). "[T]he 'party resisting summary judgment must present specific facts why he cannot oppose the motion and must specifically demonstrate "how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact."'" *Owens*, 759 So. 2d at 1120 (quoting *Prescott v. Leaf River Forest Prods., Inc.*, 740 So. 2d 301, 306 (Miss. 1999)).

¶31.   Mississippi Rule of Civil Procedure 56(f) states that

> Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such order as is just.

M.R.C.P. 56(f). "If additional time is granted, it should be premised on the court's conclusion that '. . . the party opposing summary judgment [has] been diligent and [has] acted in good faith.'" *Dees*, 152 So. 3d at 1175 (alterations in original) (quoting *Owens*, 759 So. 2d at 1120).

¶32.   JCA did not allege that it could not obtain affidavits to support its opposition to the OSA's motion. JCA also failed to present specific facts as to why it could not oppose the motion. The OSA filed its motion for summary judgment on November 26, 2018. JCA filed

16

its response on August 12, 2020. Auditor Pickering's affidavit was attached to the response and was also signed in August 2020. Yet JCA did not request any written discovery or notice any depositions in the almost two years between the filing of the motion and its response.[3]

¶33. However, JCA failed to present evidence that it complied with Section 7-7-211. Additionally, JCA failed to properly state why it could not have obtained that evidence prior to the summary judgment motion. "[S]ummary judgment is mandated where the respondent has failed 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Dees*, 152 So. 3d at 1174 (quoting *Kuiper v. Tarnabine*, 20 So. 3d 658, 661 (Miss. 2009)). Thus, the retention agreement is void under Section 7-7-211.

### B. Mississippi Code Section 7-5-39

¶34. Mississippi Code Section 7-5-39 states that, "[e]xcept as otherwise provided by law, the Attorney General shall . . . act as counsel for any of the state officers in suits brought by or against them in their official capacity . . . . Miss. Code Ann. § 7-5-39(1) (Rev. 2019). Yet, under Mississippi Code Section 7-5-39(3)(b)(i), the attorney general must authorize the retention of independent counsel if there is a "significant disagreement" between the State Auditor and the attorney general "as to the legal strategy to be used in the matter, and the Outside Counsel Oversight Commission [OCOC] has first approved the retention of outside counsel." Miss. Code Ann. § 7-5-39(3)(b)(i) (Rev. 2019).

---

[3]At the hearing for the motion for summary judgment, JCA's attorney did state that "the novel pandemic has prevented us from being able to take discovery, but we're ready now."

¶35. The retention agreement stated that the OSA had "made a written determination that these attorneys should be entitled to a greater or enhanced fee other than that provided by Sec. 7-5-8 and has requested that the [OCOC] approve the terms of this contract and an enhanced contingency fee in such amount as they deem appropriate." It also stated that "the State Auditor, subject to the approval of the [OCOC], has made a determination that the posting of this contract on the Attorney General's website would negatively affect the State's interest . . . ."

¶36. The OSA argues that neither the complaint nor Auditor Pickering's affidavit contained an allegation or proof that the attorney general had disagreed with Auditor Pickering as to legal strategy or that the attorney general had been made aware of the Tobacco Lawyers litigation. It contends that no statutory authority existed to allow Auditor Pickering to unilaterally retain JCA to sue on behalf of the State.

¶37. JCA argues that it can be inferred from its complaint that Auditor Pickering entered into the retention agreement after a disagreement with the attorney general as to the prosecution of the Tobacco Lawyers litigation. It contends that its complaint clearly establishes an agreement between JCA and Auditor Pickering, that Auditor Pickering breached the agreement by failing to pay Xenophon, that Auditor Pickering led JCA to believe that the OSA would pay Xenophon, and that JCA incurred damages as a result of Auditor Pickering's actions. JCA states that it was not required to specifically plead whether the provisions of Mississippi Code Section 7-5-39 were met. JCA also again notes that no discovery has been conducted at this point.

18

¶38.    Again, JCA correctly argues that it was not required to specifically plead whether the provisions of Section 7-5-39 were met. However, when the OSA filed its motion for summary judgment, JCA was required to present proof in rebuttal or to "present specific facts why he cannot oppose the motion and must specifically demonstrate 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *Stanley v. Scott Petroleum Corp.*, 1184 So. 3d 940, 942 (Miss. 2016) (internal quotation mark omitted) (quoting *Prescott*, 740 So. 2d at 308). The OSA argued in its motion for summary judgment that JCA's claims were barred by Section 7-5-39. Yet JCA presented no evidence in response that the attorney general had declined representation or that there had been a significant disagreement between Auditor Pickering and the attorney general. JCA also failed to present specific facts as to why it could not oppose the motion. Therefore, JCA again failed to present evidence showing its compliance with Section 7-5-39. Accordingly, noncompliance with the mandatory language of Section 7-5-39 rendered the contract void.

### C.    Mississippi Code Section 7-5-8

¶39.    Mississippi Code Section 7-5-8 provides that, "[b]efore entering into a contingency fee contract with outside counsel, the state, an arm or agency of the state, or a statewide elected officer acting in his official capacity must first make a written determination that contingency fee representation is both cost-effective and in the public interest." Miss. Code Ann. § 7-5-8(1) (Rev. 2019). Subsection (2) provides limitations for a contingency fee contract. Miss. Code Ann. § 7-5-8(2)(a) (Rev. 2019). And Subsection (3) states that

19

The limits on fees set forth in subsection (2) of this section shall not apply if:

(a) The state, an arm or agency of the state, or a statewide elected officer acting in his official capacity makes a written determination stating the reasons why a greater fee is necessary, proper, and in the best interests of the state in a particular case; and

(b) The [OCOC] approves any terms of the contingency contract that exceed the limits set forth in subsection (2) of this section.

Miss. Code Ann. § 7-5-8(3) (Rev. 2019).

¶40. The OSA next asserts that the retention agreement's contingency fee provision was greater than that expressly authorized by Section 7-5-8(2) and that the retention agreement was not preapproved by the OCOC before Auditor Pickering and JCA entered into the contract. In opposition, JCA argues that the retention agreement states that the OSA "has made a written determination that these attorneys should be entitled to a greater or enhanced fee other than that provided by Sec. 7-5-8 and has requested that the [OCOC] approve the terms of the contract and an enhanced contingency fee in such amount as they deem appropriate." Therefore, JCA asserts that it can be inferred from the retention agreement that Auditor Pickering complied with the requirements of Section 7-5-8 prior to entering into the agreement. Further, JCA again argues that it was not required to specifically plead whether Auditor Pickering had complied with Section 7-5-8 and that discovery had not been completed.

¶41. For summary judgment purposes, it can be inferred from the retention agreement that Auditor Pickering had made a written determination regarding contingency fee representation in accordance with Section 7-5-8(3). In addition, the retention agreement discusses approval

20

by the OCOC. Therefore, summary judgment should not have been granted based on noncompliance with Section 7-5-8.

¶42. However, the OSA additionally asserts that, because the case did not lead to a recovery of any monetary sum, JCA is not entitled to any payment and asserts that the risk of loss remained with JCA. The retention agreement states that "[t]he State Auditor and the Attorneys both recognize that the Claims present numerous factual and legal obstacles, and that no assurance of success or recovery on the Claims has been or can be made." It provides that fees and expenses for experts "shall be initially borne or funded entirely by the Attorneys, but shall, except as provided in Paragraph No. IV(D)(3) hereof, be reimbursed to the Attorneys exclusively from funds or other elements of value . . . by virtue of any Recovery before deduction of fees owed or paid to the Attorneys . . . ." The above provisions in the retention agreement provide no avenue for reimbursement of expert fees or expenses absent a recovery. Therefore, even if the contract was not void for failure to present evidence of statutory compliance, because the Tobacco Lawyers litigation led to no recovery, the above stated provisions bar JCA from recovering the Xenophon expenses.

¶43. The retention agreement does have a quantum meruit provision that states that the attorneys are entitled to "reimbursement for all out-of-pocket expense and (b) fees . . . in the event that (x) the state, acting through the State Auditor . . . withdraws from or ceases for any reason the prosecution or pursuit of the Claims or Recovery . . . ." However, because the contract is void, any recovery under this provision is moot.

### D. Mississippi Code Section 25-9-120

21

¶44. Lastly, the OSA argues that at the time that the retention agreement was signed, the Personal Service Contract Review Board (PSCRB) was required to approve the retention agreement.[4] Miss. Code Ann. § 25-9-120(3) (Rev. 2010). The OSA contends that the PSCRB did not approve the retention agreement and did not approve the Xenophon contract. Therefore, it argues that neither contract is binding on the State. JCA contends that its previous arguments also address this allegation.

¶45. JCA also failed to provide any evidence that the provisions of Section 25-9-120(3) had been met. JCA was required to submit proof to rebut the OSA's arguments in its motion for summary judgment. Because JCA did not present evidence that it complied with statutory mandates, the parties had no legal capacity to make a contract. Therefore, the contract was void, and the trial court erred by failing to grant summary judgment.

**II.     Whether JCA's equitable claims were filed within the applicable statute of limitations.**

¶46. JCA's complaint contains alternative claims of implied contract, unjust enrichment, indemnity, and promissory estoppel. This Court's finding that the retention agreement was void does not preclude JCA's alternative claims. However, the OSA argues that any claim based upon an implied contract is invalid because JCA failed to comply with the notice provision of the MTCA and failed to file its lawsuit within the one-year statute of limitation pursuant to the MTCA.

¶47. Mississippi Code Section 11-46-11(1) mandates that, if a person has a MTCA claim,

---

[4]The PSCRB has since been abolished and the Public Procurement Review Board has taken over its powers and duties. Miss. Code Ann. § 25-9-120(2) (Rev. 2018).

"at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity." Miss. Code Ann. § 11-46-11(1) (Rev. 2019). JCA sent a notice of claim to Auditor Pickering on May 18, 2018. JCA filed its complaint on October 17, 2018. Therefore, JCA complied with the notice provision under Section 11-46-11(1).

¶48.    Still, Mississippi Code Section 11-46-11(3)(a) mandates that "[a]ll actions brought under this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based . . . ." Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2019). "[T]he MTCA's one-year statute of limitations begins to run when the claimant knows, or by exercise of reasonable diligence should know, of both the damage or injury, and the act or omission which proximately caused it." *Caves v. Yarbrough*, 991 So. 2d 142, 155 (Miss. 2008).

¶49.    The OSA argues that the one year statute of limitations began to run in August 2015, when Auditor Pickering notified JCA that his office would not pursue the Tobacco Lawyers litigation. JCA argues that its claims are well within the statute of limitations because its claims are based upon Auditor Pickering's failure to pay Xenophon, not his cessation of prosecution of the Tobacco Lawyers litigation. JCA assserts that Auditor Pickering continued to lead JCA to believe that the OSA would pay Xenophon well after August 2015.

¶50.    As previously stated, the record contains email exchanges between Jernigan and Auditor Pickering. On June 9, 2015, Auditor Pickering wrote to Jernigan that he had been in touch with Xenophon's CEO and stated, "[y]es, he is forwarding everything to to [sic] me

23

and he knows I am working to get payments to him." On September 17, 2015, Jernigan emailed Auditor Pickering and informed him that Xenophon had filed a lawsuit against JCA. The record also includes an email sent on August 2, 2017, from Jernigan to Auditor Pickering stating that Xenophon's motion for summary judgment had been granted and that it had been awarded damages in the amount of $314,000. However, after the June 9, 2015, email in which Auditor Pickering stated that he was working to get payments to Xenophon, the record includes no other response from Auditor Pickering.

¶51. Auditor Pickering's affidavit stated that

> I have personal knowledge that this litigation arises from the facts set forth herein and the fact that I had repeatedly assured Jernigan and the associated attorneys that the litigation would be instituted. If the litigation was successful, the attorneys would be able to recover their expenses, including the fees of the consultant, Xenophon Strategies.
>
> I had acknowledged and agreed that if the case was not filed that the Auditor's office would pay Xenophon and that my office had the necessary funds to do so. This agreement was never reduced to writing, but my counsel had my verbal assurance that it would be done.

¶52. We find that JCA had knowledge of both the damage and the act which proximately caused it when Xenophon filed its lawsuit against JCA for breach of contract. The record indicates this occurred around September 2015. It additionally indicates that JCA notified Auditor Pickering that Xenophon had instituted an action against it at that time. Therefore, JCA had a year from that date to notify the OSA of its claims under the MTCA. Because JCA did not file its notice of claim until May 2018, its implied contract claims are barred by the applicable statute of limitations. Therefore, the trial court erred by denying summary judgment in favor of the OSA.

**CONCLUSION**

¶53.    The retention agreement between the OSA and JCA is void due to the absence of evidence of statutory compliance. Further, JCA's equitable claims under the MTCA were filed outside the applicable statute of limitations. Therefore, the trial court erred by denying summary judgment in favor of the OSA. Accordingly, we reverse the decision of the trial court, and we render judgment in favor of the OSA.

¶54.    **REVERSED AND RENDERED.**

**KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**